Sandra O. BERNHARD, Petitioner,

v.

FARMERS INSURANCE EXCHANGE, Respondent.

No. 94SC376.

Supreme Court of Colorado, En Banc.

April 22, 1996.

Rehearing Denied May 20, 1996.

**1286**

The Law Firm of Kevin S. Hannon, Kevin S. Hannon, Denver, for Petitioner.

Hall & Evans, P.C., Malcolm S. Mead, Eugene O. Daniels, Denver, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals opinion in *Bernhard v. Farmers Insurance Exchange*, 885 P.2d 265 (Colo. App.1994), which set aside an award of attorney fees incurred in an action by an insured against her insurer for bad faith breach of insurance contract. We recognize no exception to the American rule on attorney fees that would allow an award of attorney fees in a bad faith breach of insurance contract action and accordingly affirm the judgment of the court of appeals.

## I.

This is an action by the insured, Sandra Bernhard, against her automobile liability insurer, Farmers Insurance Exchange ("Farmers"), for bad faith breach of insurance contract. Bernhard's automobile insurance policy provided bodily injury liability protection in the amount of $100,000 per person and $300,000 per accident. The policy also gave Farmers "the right and duty to defend, at its own expense, any suit against the insured seeking damages on account of such bodily injury or property damage...." The policy further read: "The Company may .make such investigation and settlement of any claim or suit as it deems expedient, but

shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of liability has been exhausted by payment or judgments or settlements."

On December 5, 1986, Bernhard drove through a stop sign and struck a car, seriously injuring the two occupants, John and Lucille Olivas. Bernhard, who had consumed several alcoholic drinks before driving home from her job as a waitress at the Flatirons Country Club, was found to be legally intoxicated at the time of the accident. The Olivases sued Bernhard and the Flatirons Country Club for compensatory and exemplary damages in excess of Bernhard's $100,000 per person policy limits. As required by the terms of the contract, Farmers provided an attorney to defend Bernhard.[1]

On two separate occasions the Olivases made time-limited offers to settle their claims against Bernhard: first for the applicable policy limits of $200,000 and later, for $230,000. Farmers did not accept either of these settlement offers. At trial, the jury found against Bernhard and the Flatirons Country Club and awarded the Olivases damages substantially in excess of the policy limits. John and Lucille Olivas were awarded $407,000 and $163,000 in compensatory damages, respectively, and $5,000 each in exemplary damages. After the Flatirons Country Club paid the amount for which it was liable and Farmers paid the Olivases the $200,000 it owed on Bernhard's policy, $82,-000 remained owing on the judgment against Bernhard.

Bernhard then entered into an agreement with the Olivases in which Bernhard agreed to pursue a bad faith claim against Farmers seeking the amount of excess judgment as damages. Under this agreement, the Olivases would receive the first $82,000 of any recovery and anything above that would go to Bernhard. As long as Bernhard went through all available appeals and exhausted all her remedies, the Olivases agreed not to

---

1. Farmers also informed Bernhard that she had the right to retain her own attorney to assist in her defense, which she then did. However, in the case before us Bernhard is not seeking reimbursement for the money she spent in retaining counsel to aid in her defense against the underlying personal injury action. Instead, the only attorney fees at issue here are the fees she incurred in bringing the bad faith breach of contract claim.

execute on the $82,000 excess judgment owed to them by Bernhard.

Bernhard brought this suit for bad faith breach of contract against Farmers for its failure to settle with the Olivases. She sought a damage award for the excess judgment of $82,000 and additional damages for emotional distress. The case initially resulted in a hung jury but was retried in July of 1992. The jury did not award Bernhard any damages for emotional distress, but did award her $108,911.30 for the excess judgment and for the attorney fees she had incurred in bringing the bad faith breach of contract case against Farmers.

Farmers moved for a new trial or to amend the judgment, arguing that the jury could not award attorney fees. Bernhard agreed that the jury's verdict should not have included attorney fees, but filed a separate motion seeking an award of attorney fees from the court. At the hearing, the trial court judge awarded Bernhard $32,000 for attorney fees incurred in the pursuit of her bad faith claim against Farmers. Farmers appealed and the court of appeals reversed the trial court's award of attorney fees.

■ We granted certiorari to determine: Whether the court of appeals erred by reversing the trial court's award of attorney fees upon the petitioner's successful litigation of a tortious breach of insurance contract claim.

We hold that, unless specifically provided for in the insurance contract, attorney fees are not recoverable upon successful litigation of a bad faith breach of insurance contract claim. We therefore affirm the court of appeals' reversal of the trial court's award of attorney fees to Bernhard and remand the case for proceedings consistent with this opinion.

## II.

■ As a general rule, in the absence of a statute, court rule,[2] or private contract to the contrary, attorney fees are not recoverable by the prevailing party in either a contract or tort action. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Bunnett v. Smallwood*, 793 P.2d 157, 160 (Colo.1990). This reasoning is based on the American rule, which requires each party in a lawsuit to bear its own legal expenses.

The rationale behind the rule is broad-ranging: for example, responsibility for one's own legal expenses is thought to promote settlement; poor litigants may be discouraged from instituting actions to vindicate their rights if the penalty for losing were to include paying their opponent's attorney fees; and the difficulty of ascertaining reasonable attorney fees in every case would pose a substantial burden on judicial administration. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

Colorado does recognize several exceptions to the general rule,[3] however, Bernhard's

---

**2.** Attorney fees are addressed in Title 13, Article 17 of the Colorado Revised Statutes. Under this statutory scheme, a trial court has the discretion to award attorney fees if the bringing or defense of an action has been "substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–101, 6A C.R.S. (1987). In addition, Colorado's rules of civil procedure also authorize the award of attorney fees in specific circumstances. These rules are discussed in *Bunnett v. Smallwood*, 793 P.2d 157, 162 (Colo. 1990).

**3.** Exceptions to the American rule recognized in Colorado include those based on: the "common fund" doctrine, *County Workers Compensation Pool v. Davis*, 817 P.2d 521 (Colo.1991); a party's bad faith and lack of candor in dealing with the court, *Johnston v. District Court*, 196 Colo. 1, 580 P.2d 798 (1978); breach of fiduciary duty or breach of trust, *Buder v. Sartore*, 774 P.2d 1383

(Colo.1989); *Heller v. First Nat'l Bank, N.A.*, 657 P.2d 992 (Colo.App.1982); and a party's wrongful act proximately causing the wronged party to become engaged in litigation with others, *Publix Cab Co. v. Colorado Nat'l Bank*, 139 Colo. 205, 338 P.2d 702 (1959).

In this last exception, the fees incurred by the wronged party in the third party suit may be recovered in a later action against the wrongdoer, whereas the fees incurred in bringing the actual action against the wrongdoer are not recoverable. This exception encompasses attorney fees arising out of a variety of actions including: a quiet title action, *Elijah v. Fender*, 674 P.2d 946 (Colo.1984); an action in fraud, *International State Bank v. Trinidad Bean & Elevator Co.*, 79 Colo. 286, 245 P. 489 (1926); and a malicious prosecution, *Bernstein v. Simon*, 77 Colo. 193, 235 P. 375 (1925); *see also Technical Computer Servs., Inc. v. Buckley*, 844 P.2d 1249 (Colo.App.

claim for attorney fees does not fit within any established exception. Permitting Bernhard to recover attorney fees would represent the creation of a new exception to the American rule: a function better addressed by the legislative than the judicial branch of government.

Bernhard argues that her situation is analogous to that discussed in *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370 (Colo.App. 1982) (*Trimble I*), *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984) (*Trimble II*), and *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988) (*Trimble III*), and that since attorney fees were awarded in that line of cases, they should be awarded in her case as well. Bernhard, however, misapplies the *Trimble* cases.

The *Trimble* cases were related to a third party personal injury lawsuit brought against the insured, Trimble, based on several claims including one of negligent entrustment. Trimble's insurer, Farmers Group, Inc., was contractually required to provide for Trimble's legal defense. Farmers Group, Inc., did hire an attorney to defend Trimble. However, while this third party case was ongoing, Farmers Group, Inc., filed a declaratory judgment action against Trimble seeking a determination that Trimble's policy did not provide coverage for the negligent entrustment claim. As a result, Trimble was unable to discuss the third party proceedings with the attorney retained by Farmers Group, Inc., and because he was facing an imminent deposition in the third party suit, he was forced to retain a private attorney to defend himself. The third party claim against Trimble eventually settled out of court. In the meantime, Trimble counterclaimed against the insurer in the declaratory judgment proceeding, seeking reimbursement of the money he had spent on hiring the private attorney.

The court of appeals in *Trimble I* held that Trimble could recover his costs in hiring an attorney to defend him against the claims brought by the third party. The court reasoned that the fees were recoverable since they were incurred as a direct result of the insurer's failure to provide him with a legal defense, which was an explicit term of the contract. The court stated that the fees could be "considered damages naturally flowing from the failure of the insurer to exercise reasonable care in representing the insured in the course of litigation." *Trimble I*, 658 P.2d at 1374.

This court explained in *Bunnett v. Smallwood*, 793 P.2d 157, 161 (Colo.1990), that attorney fees are recoverable when they themselves are the subject of the lawsuit, or in other words, when the fees represent a specific benefit of the contract breached by the opposing party. For example, when an attorney brings suit against his or her own client to enforce a fee agreement, the past due attorney fees sought by the attorney are themselves the subject of the lawsuit. In such a situation the fees are not merely incidental to the bringing of the lawsuit but rather are an explicit benefit of the contract breached by the opposing party. Similarly, in *Trimble I*, Trimble sought reimbursement for the fees that he was forced to incur due to the insurer's failure to provide counsel. These fees were a specific and direct benefit of the contract breached by the insurer. Thus, they were not incidental to the bringing of the lawsuit but rather were the subject of the action itself.

While the facts show that the award of attorney fees in the *Trimble* cases fits within an exception to the American rule accepted in Colorado, the language in *Trimble II*, 691 P.2d 1138, does raise legitimate questions as to the parameters of awarding attorney fees in cases involving bad faith breach of insurance contracts. Those questions deserve to be addressed.

### A.

In *Trimble II*, this court concluded that a quasi-fiduciary relationship exists between an

---

1992) (attorney fees incurred in defending false criminal charges are recoverable in later malicious prosecution action against party that caused false charges to be brought, but fees incurred in bringing the malicious prosecution action itself are not recoverable).

An additional exception is recognized in *Bunnett v. Smallwood*, 793 P.2d at 161, *see* discussion *infra* p. 1288.

insurer and insured within the context of defense of a third party claim.

■ Attorney fees may be recoverable in an action for breach of fiduciary duty as a recognized exception to the American rule. In *Heller v. First Nat'l Bank, N.A.*, 657 P.2d 992 (Colo.App.1982), the court of appeals found that, because the standard of conduct required of a trustee is so high, the goal in a breach of trust action is to make the injured party whole, and thus the court has the discretion to award attorney fees if necessary to meet that goal. This court later upheld *Heller* in *Buder v. Sartore*, 774 P.2d 1383 (Colo.1989). *Buder* concerned a breach of fiduciary duty action. This court reasoned that, as in a breach of trust action, the goal in a breach of fiduciary duty action is to make the injured party whole. Hence, the injured party is entitled to recover attorney fees if necessary to restore that party to his or her pre-injury status. *Buder*, 774 P.2d at 1391.

The question raised here is whether an action based on a breach of a *quasi*-fiduciary duty should be analogized to an action based on breach of a fiduciary duty and thus be treated as an exception to the American rule. We find significant and dispositive distinctions between the quasi-fiduciary duty of an insurer and the duty of a true fiduciary, and conclude that the exception does not apply.

■ In *Trimble II* we held that the quasi-fiduciary duty of an insurer toward an insured stems specifically from the insurer's control over the defense of actions brought against the insured by third parties. *Trimble II*, 691 P.2d at 1141. The determination of whether a true fiduciary relationship exists depends upon the degree of control exercised by the fiduciary over the affairs of the other person.[4] The quasi-fiduciary relationship between an insurer and an insured is limited to areas in which the insurer exercises a strong degree of control over the insured's interests. Even though the insurer may have control over the defense of a third party lawsuit, the insurer lacks any such control over many other aspects of its relationship with the insured. Thus, we refrain from characterizing the insurer/insured relationship as quasi-fiduciary for all purposes, for doing so would impose duties on the insurer that this court has not endorsed.

■ Furthermore, even in the context of defending a third party lawsuit, the relationship between an insurer and an insured falls short of a true fiduciary relationship. An insured can regain some control over her defense by retaining independent counsel, either at her own cost and expense or by later suing the insurer for collection of those fees. *Trimble II*, 691 P.2d at 1141; *Trimble I*, 658 P.2d at 1374. Also, the extent of the duty required of an insurer in the quasi-fiduciary relationship differs from what would be required in a true fiduciary relationship. One who is acting as a fiduciary for another has the duty to act with the utmost good faith and loyalty on behalf of, and for the benefit of, the other person. See *McKinney v. Christmas*, 143 Colo. 361, 363, 353 P.2d 373, 374 (1960), *Brunner v. Horton*, 702 P.2d 283, 284 (Colo.App.1985). The duty required of an insurer towards the insured is much more constrained. In *Trimble II*, this court held that an insurer's actions are governed by general principles of negligence and that the quasi-fiduciary relationship between an insurer and its insured requires only reasonable conduct on the part of the insurer, nothing more. *Trimble II*, 691 P.2d at 1142.

■ The insurer-insured relationship is a contractual one, created for the mutual benefit of the parties. The insured retains some responsibilities for, and control over, decision-making that distinguish the relationship from one of a true fiduciary nature. To hold otherwise would be to deprive both the in-

---

**4.** *Paine, Webber, Jackson and Curtis, Inc. v. Adams*, 718 P.2d 508, 515–18 (Colo.1986) (holding that whether a broker has become a fiduciary of a customer depends on the degree of control the broker has over the customer's account, involving factors such as the amount or lack of approval required before the broker acts on the customer's account, the relative sophistication of the customer, and the trust and confidence that the customer places in the broker); *McCracken v. Conticommodity Servs., Inc.*, 755 P.2d 454, 456 (Colo.App.1988) (ruling that broker who has no practical control over decisions regarding customer's account did not owe customer a fiduciary duty); *see also* CJI–Civ.3d 26:2.

sured and the insurer of the mutuality of the contract. Thus, we conclude that the duty of an insurer and that of a true fiduciary are not similar enough to warrant including the quasi-fiduciary duty of the insurer within the breach of fiduciary duty exception to the American rule.

### B.

In addition to finding a quasi-fiduciary relationship between the insurer and the insured, *Trimble II* found an implied covenant of good faith and fair dealing in every insurance contract. *Trimble II*, 691 P.2d at 1141. It is from this implied covenant of good faith and fair dealing that bad faith breach of insurance contract as a tort cause of action may arise. *Id.*

Bernhard argues that, based on *Trimble II,* good faith and fair dealing is a benefit of her insurance contract, and that the language in *Trimble III* allows recovery of attorney fees whenever an insured reasonably hires an attorney to obtain benefits of the contract. We disagree with both steps of Bernhard's argument.

First, we disagree with her assertion that good faith and fair dealing is a benefit of the insurance contract. *Trimble II* imposes a legal duty on an insurer to deal with its insured in good faith. *Trimble II*, 691 P.2d at 1141. It does not find good faith or fair dealing to be a benefit of the contract itself. Instead, *Trimble II* creates a tort cause of action based on a bad faith breach of an insurance contract, but it does not give rise to a claim that failure to deal in good faith is a denial of a contract benefit.

We also disagree with Bernhard's contention that *Trimble III* allows recovery of attorney fees when any benefit of a contract has been denied. *Trimble III* holds, in pertinent part, that expenditure of attorneys' fees in defending a third party tort action could serve as the economic loss from which emotional distress damages resulted. In so holding, the court of appeals states "When an insured is reasonably compelled to hire an attorney to obtain benefits tortiously denied by his insurer, the attorney fees so incurred constitute economic loss caused by the tort

and are recoverable as damages." *Trimble III,* 768 P.2d at 1246 (citing *Brandt v. Superior Court,* 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796 (1985)).

We disapprove this particular language in *Trimble III* and its reliance on *Brandt.* The *Brandt* case stands for a much broader exception than we choose to adopt in this case. *Brandt* concerned an insured who was injured in an accident. The insured made a demand upon the disability insurer for payment of benefits, but the insurer unreasonably refused to pay. *Brandt v. Superior Court,* 37 Cal.3d 813, 210 Cal.Rptr. 211, 212, 693 P.2d 796, 797 (1985). The insured then filed an action against the insurer for: 1) breach of contract, 2) breach of the covenant of good faith and fair dealing, and 3) violation of California statutory prohibitions against unfair claims practices. Under his cause of action for breach of good faith and fair dealing, the insured included as damages the attorney fees he incurred in connection with his breach of contract claim. *Id.,* 210 Cal. Rptr. at 212–13, 693 P.2d at 797–98. The insurer successfully moved to strike the portion of the complaint requesting attorney fees. The California Supreme Court then exercised jurisdiction over the case and issued a writ of mandate directing the trial court to reinstate the demand for attorney fees as damages. *Id.,* 210 Cal.Rptr. at 215, 693 P.2d at 801.

The reasoning employed by the *Brandt* majority in allowing the claim for attorney fees to stand was as follows: if the insurer's tortious conduct compelled the insured to retain an attorney to obtain benefits due under the contract, then the attorney fees would be recoverable damages proximately caused by the tort. *Brandt,* 210 Cal.Rptr. at 212, 693 P.2d at 798. This diverges from the exception recognized in Colorado and applied in the *Trimble* line of cases. In the *Trimble* cases, the insured was forced to provide his own legal defense even though his insurance policy explicitly stated that the insurer would provide it. Thus, the attorney fees he sought to recover represented the actual legal defense the insurer should have provided for him. Under the *Brandt* facts, however, the insured did not hire legal representation in

order to defend against a third party claim, but instead hired legal representation to force the insurer to provide him with disability payments. Thus, while the disability payments were an actual benefit of the contract denied to him, the attorney fees were only incidental to his efforts to gain this benefit.

We find the dissent in *Brandt* persuasive in reasoning that if recovery were allowed for attorney fees stemming from a suit to enforce any wrongful withholding of benefits under an insurance contract, this would effectively swallow the entire American rule on attorney fees. *Brandt,* 210 Cal.Rptr. at 217, 693 P.2d at 803 (Lucas, J., dissenting). Unless we are prepared to abandon the American rule for the English rule of automatically awarding attorney fees to the prevailing party, it would be difficult to carve out an exception that allows an award of attorney fees that are incidental to the bringing of a bad faith breach of contract action. Attorney fees are incurred by most parties to most lawsuits. If the goal were always to make the prevailing party genuinely whole, these fees would be an element of damage. But such is not the law. Thus, we confine the applicable exception in Colorado to where the attorney fees directly represent a benefit of the contract wrongfully denied by the opposing party.

■ Therefore, even if Bernhard were correct in submitting good faith and fair dealing to be a benefit of the contract, attorney fees incurred in her action against Farmers to obtain good faith and fair dealing are a consequence of, or are incidental to, her claim and are not recoverable.

## III.

In conclusion, we hold that Bernhard's claim for attorney fees incurred in bringing a bad faith breach of insurance contract action does not fit into any exception to the American rule recognized in Colorado. Furthermore, we decline to carve out an additional exception since we find no principled way to create such an exception while still upholding the general principles of the American rule. We therefore conclude that an insured must bear the cost of attorney fees incurred in bringing a bad faith breach of insurance contract action. We affirm the court of appeals and remand the case for further proceedings consistent with this opinion.

LOHR, J., dissents.

SCOTT, J., does not participate.

Justice LOHR dissenting:

The majority affirms the judgment of the Colorado Court of Appeals, which set aside an award of attorney fees incurred in an action by an insured against her insurer for bad faith breach of an insurance contract. Maj. op. at 1286; *see Bernhard v. Farmers Ins. Exch.,* 885 P.2d 265 (Colo.App.1994). The majority holds that no exception to the American rule regarding attorney fees exists in a bad faith breach of insurance contract action and therefore holds that an award of attorney fees is impermissible in the instant case. Maj. op. at 1286. The majority rejects Bernhard's claim for attorney fees on two bases. First, the majority recognizes that a quasi-fiduciary relationship exists between an insurer and an insured when defending against a third party claim but holds that the duty of an insurer is not sufficiently similar to that of a true fiduciary to warrant including the insurer-insured relationship within the breach of fiduciary duty exception to the American rule. Maj. op. 1289–1290. Secondly, the majority rejects Bernhard's contention that the insurer's implied covenant of good faith and fair dealing is a benefit of her insurance contract and that attorney fees incurred to obtain such benefit are recoverable pursuant to *Farmers Group, Inc. v. Trimble,* 768 P.2d 1243 (Colo.App.1988) (*Trimble III* ), and *Brandt v. Superior Court,* 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796, 797 (1985). Maj. op. at 1290. Because I would hold that the insurer's duty arising from the quasi-fiduciary relationship of the insurer to the insured in defending against a third party claim is sufficiently analogous to the duty of a true fiduciary to trigger the fiduciary duty exception to the American rule regarding attorney fees and because I would hold that attorney fees incurred by the insured to obtain the benefit of the insurer's implied covenant of good faith and fair deal-

ing are recoverable under *Trimble III* and *Brandt,* I respectfully dissent.

## I.

I will briefly set forth the facts of this case.[1] This is an action by Sandra Bernhard against her insurer, Farmers Insurance Exchange (Farmers), for a bad faith breach of insurance contract. Pursuant to Bernhard's policy, Farmer's had "the right and duty to defend, at its own expense, any suit against the insured seeking damages on account of ... bodily injury [to any person] or property damage...." The policy also provided that Farmers "may make such investigation and settlement of any claim or suit as it deems expedient, but shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of liability has been exhausted by payment or judgments or settlements."

After an accident in which Bernhard was responsible for injuring two persons, Farmers provided Bernhard with an attorney to defend her against the claims of the injured persons. The claimants made two separate time-limited offers to settle their claims against Bernhard. The first offer was within the applicable policy limits, and the second was for $30,000 more than the policy limits. After a jury trial, the jury awarded the injured persons amounts substantially in excess of the policy limits, resulting in an excess judgment against Bernhard.

Subsequently, Bernhard agreed with the injured persons to pursue a bad faith claim against Farmers, seeking the amount of the excess judgment as damages. If Bernhard were to recover, the injured persons would receive the portion of the recovery necessary to satisfy the excess judgment and Bernhard would keep any of the recovery above that amount.

After the trial on the bad faith breach claim, Bernhard received an award that included attorney fees. Bernhard agreed with Farmers that the jury's verdict could not include attorney fees and sought a court order awarding such fees. After a hearing, the trial court awarded Bernhard $32,000 for attorney fees incurred in pursuing her bad faith claim against Farmers. The court of appeals reversed, and we granted certiorari. The majority now affirms the court of appeals.

## II.

We follow the American rule, which recognizes that in the absence of a statute, court rule, or private contract to the contrary, attorney fees generally are not recoverable by the prevailing party in either a contract or tort action. *Bunnett v. Smallwood,* 793 P.2d 157, 160, 162 (Colo.1990); *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Colorado has recognized various exceptions to the American rule allowing the recovery of attorney fees.[2] As I will discuss below, I believe additional exceptions are found in the *Trimble* line of cases, and that those exceptions are applicable here. *See Farmers Group, Inc. v. Trimble,* 658 P.2d 1370 (Colo.App.1982) (*Trimble I* ); *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo. 1984) (*Trimble II* ); *Farmers Group, Inc. v. Trimble,* 768 P.2d 1243 (Colo.App.1988) (*Trimble III* ).

### A.

The *Trimble* line of cases involved a third party personal injury action against the insured, Trimble. The insurance company, Farmer's Group, Inc., provided legal counsel to defend Trimble in the third party suit but subsequently filed a declaratory judgment action against Trimble to determine whether Trimble's policy covered one of the claims. *Trimble I,* 658 P.2d at 1373. Trimble retained independent counsel and counterclaimed against the insurer for damages, alleging bad faith breach of insurance contract, among other claims, based on misconduct in the manner in which the insurer handled the third party claim. The district court dismissed each of the counterclaims for failure

---

**1.** The majority opinion has a more lengthy rendition of the facts. *See* maj. op. at 1286–1287.

**2.** A listing of some exceptions to the American rule recognized in Colorado is set forth in the majority opinion. Maj. op. at 1287 n. 3.

to state a claim. The court of appeals reversed dismissal of certain of the counterclaims, including the counterclaim for bad faith breach of insurance contract. We granted certiorari "to consider whether evidence of intentional conduct is necessary to establish the tort of bad faith breach of an insurance contract." *Trimble II,* 691 P.2d at 1139. We concluded that "the standard of conduct of an insurer in relation to its insured in a third party context must be characterized by general principles of negligence." *Id.* at 1142. We held that tested by the appropriate standard, the counterclaim adequately stated a claim on which relief could be granted. *Id.* at 1142–43. We therefore affirmed the part of the court of appeals' judgment reversing dismissal of the bad faith breach claim.

In arriving at our decision in *Trimble II,* we held that "[t]he standard of conduct on the part of the insurer when dealing with claims arising under an insurance policy is shaped by, and must reflect, the quasi-fiduciary relationship that exists between the insurer and the insured by virtue of the insurance contract." *Id.* at 1141. We stated: "Particularly when handling claims of third persons that are brought against the insured, an insurance company stands in a position similar to that of a fiduciary." *Id.* We reasoned that this is so because under the insurance contract, "the insurer retains the absolute right to control the defense of actions brought against the insured, and the insured is therefore precluded from interfering with the investigation and negotiation for settlement." *Id.*

The issue now before us is whether an insured can recover attorney fees incurred in successfully pursuing a bad faith breach of insurance contract claim against an insurer. As the majority recognizes, attorney fees may be awarded to a successful plaintiff in an action for breach of fiduciary duty, as an exception to the American rule. *Buder v. Sartore,* 774 P.2d 1383 (Colo.1989); *Heller v. First Nat'l Bank, N.A.,* 657 P.2d 992 (Colo. App.1982); *see* maj. op. at 1288–1289. The majority, however, concludes that the quasi-fiduciary duty of an insurer to its insured and the duty of a true fiduciary to its benefi-

ciary are significantly different and consequently breach of the quasi-fiduciary duty does not qualify for the breach of fiduciary duty exception to the American rule regarding the recovery of attorney fees. *See* maj. op. at 1289–1290. I would hold to the contrary and would allow recovery of attorney fees incurred by an insured in successfully maintaining a bad faith breach of contract claim against the insurer.

The majority asserts that the insurer lacks any control over many aspects of its relationship with the insured and therefore the majority "refrain[s] from characterizing the insurer/insured relationship as quasi-fiduciary for all purposes." Maj. op. at 1289. This statement creates confusion regarding the nature of the quasi-fiduciary relationship and I believe misconstrues the term as intended by this Court in *Trimble II.* The relevant context for consideration of the relationship of insurer and insured for purposes of the present case is the defense of third party claims against the insured. In this context, the analogy of the relationship of insurer and insured to a fiduciary relationship is at its strongest. This is because of the degree of control ceded to the insurer by the insured pursuant to the insurance contract in conducting such defense. The fact that in other aspects of their relationship the insurer may have no such duty to its insured is not relevant for the purpose of the present case.

In refusing to recognize an analogy to a fiduciary relationship, the majority determines that the relationship between the insurer and the insured is simply a contractual relationship. *See* Maj. op. at 1289. However, I believe two important distinctions exist in this type of contractual relationship. First, we have recognized the disparity of control between the contracting parties in the insurance contract as contrasted with that existing in other contractual relationships. *Trimble II,* 691 P.2d at 1141. Second, a consumer's expectation in entering into an insurance contract is to be freed from liability and to obtain security from economic catastrophe. *See Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565, 571 (1986). Therefore, although the relationship is founded in contract, a quasi-fiduciary relationship arises

because of the unique characteristics of the mutual obligations and expectations of the parties.

In *Rawlings v. Apodaca*, the court determined that an insurer violates the covenant of good faith and fair dealing when, for the purpose of protecting its own interests, it does not act with equal consideration, fairness and honesty to avoid depriving the insured "of the very security for which he bargained or expos[ing] him to the catastrophe from which he sought intervention." *Id.*, 726 P.2d at 571. In so holding, the court in *Rawlings* determined that although the insurer is not a fiduciary, the insurer does have some duties of a fiduciary nature. *Id.*[3] In the present case the duties of the insurer to defend Bernhard against the third party claims were quasi-fiduciary. I disagree with the majority's conclusion that the quasi-fiduciary duty of an insurer in this context and the duty of a true fiduciary are so significantly different that the exception regarding the recovery of attorney fees should not apply. Maj. op. at 1289.

In the context in which the quasi-fiduciary duty applies, the insurer must act in good faith and take the interests of the insured into account in its conduct of the defense and of settlement negotiations. *See Trimble II*, 691 P.2d at 1141. This is only a natural and fair consequence of the terms of the insurance contract, where the insured relinquishes control of the defense of third party claims and the insurer assumes responsibility for the defense.

Because a breach of a fiduciary duty is a recognized exception to the American rule, I likewise would include breach of the heightened duty associated with the quasi-fiduciary relationship of an insurance contract as an exception to the American rule that generally bars the recovery of attorney fees in a contract or tort action.

### B.

The majority opinion disagrees with Bernhard's assertion that good faith and fair dealing is a benefit of her insurance contract and that the language in *Trimble III* allows recovery of attorney fees whenever an insured reasonably hires an attorney to obtain the benefits of such contract. Maj. op. at 1290.

*Trimble III* was an appeal by the insurer following a verdict for Trimble on his claim for bad faith breach of insurance contract following our remand in *Trimble II*. The court of appeals recognized that the damages for emotional distress at issue on appeal could be awarded only if sufficient economic loss was also established. The court held that the attorney fees incurred by the insured "to obtain the benefits tortiously denied by his insurer ... constitute economic loss caused by the tort and are recoverable as damages." *Trimble III*, 768 P.2d at 1246. In so holding, the court of appeals relied upon *Brandt v. Superior Court*, 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796 (1985).

*Brandt* involved an action by an employee who was a beneficiary of a group disability policy provided by his employer. The employee became totally disabled, but the insurance carrier refused to pay any benefits. The employee filed a complaint, alleging both a contract claim, seeking to be paid the benefits due under the policy, and a tort claim, seeking additional damages based upon the insurer's breach of the covenant of good faith and fair dealing. The court in *Brandt* held

---

**3.** In dicta, various courts have recognized the existence of a fiduciary relationship between the insurer and the insured under the provisions of the policy that impose upon the insurer the obligation of exercising good faith in negotiating for and effecting a settlement of a claim against its insured. *See Baxter v. Royal Indem. Co.*, 285 So.2d 652, 655–56 (Fla.Dist.Ct.App.1973)(holding that a fiduciary duty exists pursuant to bodily injury provision to effect a settlement in good faith and protect from excess judgment but no such duty exists with respect to claims made against it pursuant to uninsured motorist provision under which the insured was suing.), *cert.*

discharged, 317 So.2d 725 (Fla.1975). In *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565 (7th Cir.1978), the court, in dicta, recognized the fiduciary duty pursuant to third party liability coverage. The court stated:

> [W]hen the insured is sued by a third party, the insurance company takes over the defense of the suit and the insured cannot settle the matter without the permission of the insurer. It is this control of the litigation by the insurer coupled with differing levels of exposure to economic loss which gives rise to the 'fiduciary' nature of the insurer's duty.

*Id.* at 569.

that an insured is entitled to recover attorney fees in an action to obtain benefits under the policy, including attorney fees when the insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy. *Id.*, 210 Cal.Rptr. at 212, 693 P.2d at 798. The court reasoned that "[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense." *Id.* The court in *Brandt* allowed recovery of attorney fees as damages proximately caused by the tort. *Id.*

Similarly, in *Trimble III,* the court of appeals determined that attorney fees are proper damages where the insured "is reasonably compelled to hire an attorney to obtain benefits tortiously denied by his insurer" because these fees "constitute economic loss caused by the tort and are recoverable as damages." *Trimble III,* 768 P.2d at 1246. *Trimble III* stated this principle of law relying on *Brandt* without any limitations as the majority here now wishes to establish. Nowhere did either *Trimble III* or *Brandt* limit the recovery of attorney fees to securing benefits explicitly listed in the contract. Farmer's tortious conduct compelled Bernhard to hire an attorney to obtain the benefit of the implied covenant of good faith and fair dealing. According to the explicit language in *Brandt,* relied upon and restated in *Trimble III,* Bernhard is entitled to recover her attorney fees.

### III.

For the foregoing reasons I respectfully dissent and would reverse that part of the judgment of the Colorado Court of Appeals that reversed the trial court's award of attorney fees for the bad faith breach of the insurance contract.