R. Brooke Jackson, United States District Judge
This matter is before the court on Plaintiff and Counterclaim Defendant Auto-Owners Insurance Company's Motion for Summary Judgment, ECF No. 87. For the reasons discussed herein, this motion is GRANTED IN PART and DENIED IN PART.
I. BACKGROUND
A. Factual Background of the Underlying Action.
This case involves an insurance dispute between a construction business, High County Coatings, Inc. ("HCC"), and its general liability insurer, Auto-Owners Insurance Company ("AOIC"). HCC is a flooring company. See Am. Compl., ECF No. 60 at ¶4. In November 2012, HCC entered into a subcontract to complete the coating work on a concrete floor at an aircraft hangar in Loveland, Colorado owned by Otter Aviation, LLC ("Otter"). Id. at ¶6. In its subcontract with the general contractor, Brinkman Construction, Inc. ("Brinkman"), HCC agreed to install epoxy and urethane floor coatings and joint caulking on the concrete slabs. Id. at ¶7. The subcontract between HCC and Brinkman contained an indemnification provision that stated that HCC would indemnify Brinkman against all claims for property damage that might arise from the performance of HCC's work. ECF No. 60 at ¶8.
HCC completed its work in February 2013. ECF No. 87 at 1; ECF No. 90 at 2. Thereafter, Brinkman discovered that the epoxy floor coating was "bubbling" or "blistering" on top of the concrete slab and demanded that HCC re-perform its work at the project.[1] ECF No. 60 at ¶10; ECF
*1331 No. 90 at 2. On July 15, 2014 HCC entered into a "Floor System Agreement" with Brinkman to remove the existing coating on the floor and install a new flooring system. ECF No. 60 at ¶12; ECF No. 90-1 at 1. On August 14, 2014 HCC finished applying the new flooring system at the project. Id.
Meanwhile, on May 1, 2014 -- after the bubbling issue arose but before HCC and Brinkman entered into the Floor System Agreement -- HCC's policy with its liability insurer terminated. AOIC issued a commercial general liability policy, called a "Tailored Protection Policy," No. 74529076-14 ("the Policy") to HCC effective May 1, 2014 through May 1, 2015. ECF No. 87 at 2, ECF No. 90 at 3. The Policy is found in the record of this case at ECF No. 2-1.
However, after HCC finished applying the second flooring system, the bubbling occurred again. ECF No. 60 at ¶12, ECF No. 90-1 at 1. As a result, Otter asserted construction defect claims against Brinkman and HCC. ECF No. 60 at ¶12. By letter dated June 9, 2015 Brinkman's insurer Zurich American Insurance Co. ("Zurich"), on behalf of Brinkman, tendered to HCC Otter's claim against Brinkman pursuant to the insurance and indemnity provisions of the subcontract between Brinkman and HCC. ECF No. 87-5. This letter alleged that the loss in the claim against Brinkman was caused by services performed by HCC. Id. HCC reported this claim to AOIC on June 18, 2015 with the delivery of a Loss Notice from the Colorado Insurance Professions to AOIC along with a copy of the June 9, 2015 letter. Id.
On May 6, 2016 HCC received a written denial of this claim from AOIC. ECF No. 66-1. There is a dispute about the basis of this denial. HCC states that the basis of the denial was the "your work" exclusion in the policy language, and that AOIC never mentioned the "known loss" or silica exceptions. ECF No. 90-1 at 4. AOIC maintains that HCC understood that AOIC was not providing coverage based on other sections of the Policy including an exclusion if the insured knew about the property damage prior to the policy period. ECF No. 87 at 4.
On November 17, 2016 Zurich sued HCC in Arapahoe County District Court. ECF No. 14-3 (Zurich's Complaint). On December 8, 2016 AOIC appointed counsel to defend HCC in the underlying action under a reservation of the right to deny the claim and seek reimbursement of defense costs should there be no coverage for the claim. ECF No. 66-2. In its complaint, Zurich alleges that HCC relied on improper floor testing when applying its coatings and failed to let the floor slab properly dry out before performing its work. Zurich also asserted that HCC's floor coatings damaged the Airport hangar's concrete floor. Id. For purposes of this case, that lawsuit will be referred to as the "underlying action."
B. The Present Lawsuit.
AOIC filed suit against HCC and Zurich on December 29, 2016, ECF No. 2, asserting a claim for declaratory relief against HCC. The Zurich suit against HCC was still pending in state court at that time. AOIC contended that it had neither a duty to defend HCC in the underlying action nor an obligation to indemnify it should Zurich ultimately prove successful in that case. Id. at ¶18; see also Constitution Assocs. v. N.H. Ins. Co. , 930 P.2d 556 (Colo. 1996), as modified on denial of reh'g (Jan. 13, 1997) (permitting anticipatory declaratory judgment actions to determine the "duty to defend"). HCC asserted counterclaims *1332 against AOIC for breach of contract and breach of its duty of good faith and fair dealing. ECF No. 13 at 6-7. Later HCC filed a motion for partial summary judgment concerning AOCC's duty to defend it in the state case. On July 12, 2017 I granted HCC's motion, concluding that AOIC did have a duty to defend under Colorado law. ECF No. 39. I also granted HCC's motion to stay the remainder of the present case until the underlying action was resolved, finding that the issues in this case were intertwined with the underlying action and could prejudice HCC in the underlying action. ECF No. 39.
The Zurich suit was tried in Arapahoe County District Court on October 2017, and the jury returned a verdict in favor of HCC. ECF No. 60 at 5. AOIC then returned to this Court and filed an amended complaint seeking a declaratory judgment that it owed no duty to defend HCC prior to the underlying action. ECF No. 60. HCC filed an answer and an amended counterclaim. In addition to its prior counterclaims of (1) breach of contract and (2) breach of the duty of good faith and fair dealing it also asserted new counterclaims for (3) breach of the covenant of good faith and fair dealing and (4) unreasonable delay or denial of benefits pursuant to Colo. Rev. Stat §§ 10-3-1115, 1116. ECF No. 66 at 11-12.[2] HCC's alleged damages from its breach of contract claim consist of: (1) defense costs HCC claims to have incurred with attorney Gilbert Egle after it was notified of Zurich's claim but before Zurich filed its lawsuit ($4,090); (2) attorney's fees and costs charged by its present counsel both before and during the present case (amount TBD); (3) payment pursuant to a policy benefit providing for loss of earnings coverage of $400 per day for Dave Anderson, the President of HCC's personal time spent working on the underlying action and this declaratory judgment action (approximately $8,000); and (4) costs HCC incurred retaining its bad faith expert, Robert Baldwin, in the present action (approximately $6,600 to date). ECF No. 87 at 6; ECF No. 90 at 12-17. HCC also seeks punitive damages, two times the benefit owed under the statute and interest. ECF No. 90 at 6. AOIC filed an answer to HCC's counterclaims. ECF No. 69. Although Zurich initially filed an answer and counterclaims to AOIC's amended complaint, AOIC and Zurich eventually settled with one another. Zurich is no longer a party to this litigation. See ECF No. 83.
On October 1, 2018 AOIC filed the pending motion for summary judgment against HCC on its counterclaims and for a declaratory judgment that it had no duty to defend HCC prior to the filing of the complaint in the underlying action. ECF No. 87. AOIC argues that it had no duty to defend HCC prior to the underlying action because it never received a Colorado Defect Action Reform Act ("CDARA") notice that triggered its duty to defend. It further argues that HCC's statutory bad faith claim, alleged among its amended counterclaims, is barred by the statute of limitations. It also argues that the statutory bad faith and breach of contract claims fail because the alleged damages are not covered benefits under the Policy. Lastly, it argues that HCC's knowledge of the damage prior to the inception of the Policy negates coverage under the Policy, and that the bad faith claims fail because AOIC had a legal right to file this action and its first amended complaint. HCC filed a response *1333 to this motion, ECF No. 90, and this motion became ripe upon AOIC's filing of a reply, ECF No. 96.
II. STANDARD OF REVIEW
A. Summary Judgment.
The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S.Ct. 2548. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc. , 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson , 477 U.S. at 248, 106 S.Ct. 2505. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Concrete Works of Colo., Inc. v. City & Cnty. of Denver , 36 F.3d 1513, 1517 (10th Cir. 1994).
B. Applicable Law.
When diversity jurisdiction exists, the court applies the substantive law of the forum state. See Barrett v. Tallon , 30 F.3d 1296, 1300 (10th Cir. 1994). Here, I apply Colorado law. In Colorado, the interpretation of an insurance policy is a matter of law. See Thompson v. Md. Cas. Co. , 84 P.3d 496, 501 (Colo. 2004). An insurance policy's terms are construed according to principles of contract interpretation: a court seeks to give effect to the intent and reasonable expectations of the parties. Id. However, courts assume a "heightened responsibility in reviewing insurance policy terms to ensure that they comply with public policy and principles of fairness. Accordingly, ambiguous terms in an insurance policy are construed against the insurer." Id. at 501-502 (internal quotation marks and citation omitted). In the realm of insurance policies issued to construction professionals, the Colorado legislature has provided that where a policy provision that appears to grant coverage conflicts with a policy provision limiting coverage, a court shall construe the insurance policy to favor coverage if reasonably and objectively possible. Colo. Rev. Stat. § 13-20-808(5).
III. ANALYSIS
A. Colorado Defect Action Reform Act Notice.
AOIC argues that it had no duty to defend HCC prior to Zurich's filing of the complaint in the underlying action because it never received a statutorily compliant notice of claims. Under the CDARA, the duty to defend arises either upon the service of the statutory notice of claims of defects or upon the filing of an action. See Colo. Rev. Stat. § 13-20-808(7)(a)(I). AOIC believes that this statute requires a notice to itself as the insurer. HCC disagrees and argues that this section refers to notice procedures between a "claimant" and a "construction professional." Accordingly, AOIC is not entitled to a statutory notice as an insurer; rather, its duty to defend began when HCC as the construction professional received a notice of claims.
I need go no further than the relevant portion of the statute:
(7)(a) An insurer's duty to defend a construction professional or other insured under a liability insurance policy *1334 issued to a construction professional shall be triggered by a potentially covered liability described in:
(I) A notice of claim made pursuant to section 13-20-803.5; or
(II) A complaint, cross-claim, counterclaim, or third-party claim filed in an action against the construction professional concerning a construction defect.
(b)(I) An insurer shall defend a construction professional who has received a notice of claim made pursuant to section 13-20-803.5 regardless of whether another insurer may also owe the insured a duty to defend the notice of claim unless authorized by law. In defending the claim, the insurer shall:
(A) Reasonably investigate the claim; and
(B) Reasonably cooperate with the insured in the notice of claims process.
Colo. Rev. Stat. § 13-20-808.
Paragraph 7(b)(I) states that an insurer "shall defend a construction professional who has received a notice of claim made pursuant to section 13-20-803.5 ..." (emphasis added). Reading this paragraph together with 7(a)(I) suggests that the notice of claim that triggers the duty to defend is a notice made to the construction professional rather than the insurer. Also, paragraph 7(b)(I) refers to section 13-20-803.5, which concerns a written notice by "a claimant ... to the construction profession."[3]
This statute does not entitle AOIC as the insurer to a separate CDARA notice. Instead, it sets the time frame from which AOIC is obligated to defend HCC as either when an action against HCC is filed or when HCC, as the construction professional, receives a CDARA notice. See also Melssen v. Auto-Owners Ins. Co , 285 P.3d 328, 332-334 (Colo. App. 2012) (finding the duty to defend triggered when the claimant sent the insured a notice of claim in accordance with the CDARA, Colo. Rev. Stat. § 13-20-803.5 ).
AOIC also notes that under the terms of its insurance policy, it only has a duty to defend HCC against any "suit" seeking damages to which the insurance applies. See ECF No. 27-2 (the Policy) at 24, 30. Therefore, AOIC argues, AOIC had no duty to defend HCC prior to the filing of the complaint in the underlying action. However, the Policy defines "suit" in a way that is broader than AOIC contends:
21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:
a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.
Id. at 43. AOIC already lost this argument in the Colorado Court of Appeals. See Melssen , 285 P.3d at 334 ("Contrary to Auto-Owners' contention, we conclude the CDARA notice of claim process constituted an alternative dispute resolution proceeding under the policy."). I agree.
I note that under the policy's language, AOIC must have consented to HCC's participation in CDARA claim resolution process. Neither side briefed the *1335 issue of whether AOIC consented to this alternative dispute resolution proceeding. However, "an insurer waives its right to argue that its insured failed to give the required notice under a policy if it denied liability on the basis of lack of coverage and did not assert the noncompliance defense until after judgment was entered against its insured." Melssen , 285 P.3d at 336 (citing Colard v. Am. Family Mut. Ins. Co. , 709 P.2d 11, 14 (Colo. App. 1985) ).
Lastly, AOIC argues that the June 9 letter that HCC received from Zurich on behalf of Brinkman is insufficient to constitute a CDARA notice triggering AOIC's duty to defend. For one, AOIC asserts that because this notice of claim was not from the property owner, Otter, it was not a valid CDARA notice. ECF No. 96 at 1-2. Given that Zurich was Brinkman's liability insurer and sued HCC over the same claim that Otter asserted against Brinkman and Brinkman asserted against HCC, I am unconvinced that the fact that this notice of claim came from Zurich (on behalf of Brinkman) rather than Otter is significant. Colo. Rev. Stat. § 13-20-802.5(5) defines a "notice of claim" as follows:
[A] written notice sent by a claimant to the last known address of a construction professional against whom the claimant asserts a construction defect claim that describes the claim in reasonable detail sufficient to determine the general nature of the defect, including a general description of the type and location of the construction that the claimant alleges to be defective and any damages claimed to have been caused by the defect.
Colo. Rev. Stat. § 13-20-802.5(5) (emphasis added). Notably, the statute does not require the claimant sending the written notice to be the property owner or the ultimate claimant. Here, Brinkman was a claimant against HCC. This definition also does not require that the notice of claims refer to the CDARA statute.
AOIC also argues that the letter fails CDARA's requirements because it does not describe the claim in reasonable detail sufficient to determine the nature of the defect and claimed damages. ECF No. 87 at 2. HCC asserts that in addition to this June 9, 2015 letter, there were multiple notice letters to AOIC by Brinkman and Zurich's counsel notifying it of Otter's construction defect claims, and that collectively, these notices apprised AOIC that the project owner, Otter, was asserting a construction defect claim against Brinkman and that Brinkman and its insurer Zurich were in turn suing HCC for that claim. ECF No. 90 at 6; ECF No. 90-1 at 1-2. It seems very likely that given their prior business dealings and history with this dispute, HCC and AOIC knew exactly what defect and damages Brinkman was referring to in its June 9 letter. However, HCC concedes and I agree that it is a matter of disputed fact whether the notice letters individually or in total constituted a sufficient CDARA notice to HCC so as to trigger AOIC's duty to defend. If AOIC wishes to continue to stand on this argument, it is one that will have to be submitted to the jury.
B. HCC's Statutory Bad Faith Counterclaim - Statute of Limitations.
AOIC next asks for summary judgment on HCC's statutory bad faith claim. It argues that this counterclaim, filed on May 11, 2018 with HCC's amended answer, ECF No. 66, is barred by the statute of limitations. The statute of limitations for filing a bad faith claim under Colo. Rev. Stat. §§ 10-3-1115, 1116 is two years from "when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by exercise of reasonable diligence."
*1336 Colo. Rev. Stat. § 13-80-108(8) ; Rooftop Restoration, Inc. v. American Family Mut. Ins. Co. , 418 P.3d 1173 (Colo. 2018). AOIC argues that HCC's bad faith claims began to accrue on one of three dates: (1) as early as August 2015, when AOIC's representative informed HCC's president, that it would not participate in efforts to resolve the claims asserted against HCC and instructed HCC to "wait till you're sued," ECF No. 66 at 8; (2) by at least September 15, 2015, the date by which HCC alleges in its answer that AOIC knew there was potential coverage under its Policy, ECF No. 66 at 8; and (3) at the latest by May 6, 2016, the date AOIC sent HCC a coverage position letter denying its coverage claim, ECF No. 66 at 8. ECF No. 87 at 10-11.
HCC argues that its Answer and Amended Counterclaim relate back to the filing of its first Answer and Counterclaim. Fed. R. Civ. P. 15(c)(1)(B) permits an amendment to a pleading to relate back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading. Here, HCC's original counterclaim, filed on February 3, 2017, within the two-year period, asserted common law "bad faith." The amended counterclaim added the statutory claim for unreasonable delay or denial of an insurance benefit, essentially a statutory bad faith claim. It arises out of the same allegedly "unreasonable" conduct. Accordingly, I will not grant summary judgment dismissing HCC's claims based on the statute of limitations defense.[4]
C. HCC's Alleged Prior Knowledge of Damage.
AOIC asserts that HCC had knowledge of the bubbling floor and the elevated moisture component of the damage to the hanger floor at the project prior to the inception of the Policy. ECF No. 87 at 16. The Policy negates coverage where the insured knew about property damage, in whole or in part, prior to the inception the Policy. ECF No. 27-2 at 24. AOIC asserts that HCC knew in October 2013 that elevated moisture was present in the concrete and that moisture activates an "alikali-silica reaction" ("ASR") that damaged the concrete floor slabs. ECF No. 87 at 17. It points to an October 9, 2013 email from the project manager at Brinkman to HCC discussing ASR reaction as a factor in the floor's bubbling. ECF No. 87-2.
HCC disputes that it had knowledge of damage to the concrete floor at the project prior to the inception of the Policy. ECF No. 90 at 18. It disputes the relevance of elevated moisture, referring to the fact that all concrete has moisture. ECF No. 90 at 2. It asserts that elevated moisture only meant that the project needed a more robust floor covering, and that HCC was not responsible for resulting damage to the underlying concrete. Id.
*1337 HCC further disputes AOIC's characterization of the October 2013 email and characterizes that email as concerning a request to test the concrete floor slab for ASR. It asserts that this concrete floor slab was tested, and no ASR was discovered. ECF No. 90 at 2. HCC points to the affidavit of Mr. Anderson, ECF No. 90-2, to demonstrate that it has evidence that HCC did not have knowledge that anyone claimed HCC's work had damaged the concrete slab until after the Policy incepted. Instead, HCC asserts that it was not notified that the concrete slab was allegedly suffering from an ASR reaction until after the second epoxy floor covering bubbled, and the manufacturer investigated the cause in February 2015. ECF No. 90-1, 2. I find that there are genuine disputes of material fact concerning what HCC knew about damages to the concrete slab and when it knew it that preclude summary judgment on this issue.
D. HCC's Claimed Damages on the Counterclaims.
AOIC also argues that HCC's statutory bad faith and breach of contract claims fail because the alleged damages are not covered benefits under the Policy. I will consider the four alleged categories of damages in turn.
1) Legal Fees for Gilbert Egle Prior to the Underlying Action.
AOIC argues that because it owed no obligation to provide defense counsel to HCC until Zurich filed the underlying action, legal fees incurred prior to the underlying action are not covered by the Policy. Earlier in this order I concluded that the CDARA claim, not the filing of the lawsuit, triggered the duty to defend. Supra § III(A). Therefore, to the extent, if any, that HCC can establish that Mr. Egle's services were reasonable and necessary to HCC's defense against the Zurich claim, they are covered within the duty to defend. The same would be true of fees necessarily and reasonably charged by HCC's present counsel in HCC's defense against the Zurich claim, as opposed to the fees incurred in defense against AOIC's claim in the present case. The latter fees are not recoverable as a benefit under the insurance contract but might be recoverable under the Colo. Rev. Stat. § 10-3-1116, as I discuss next.
2) Attorney Fees and Expert Witness Costs in Current Litigation.
With certain exceptions not applicable here, the general rule, sometimes labeled the "American rule," is that parties to civil litigation must pay their own legal fees unless a statute, court rule, or contract authorizes an award of fees. I do not find anything in the insurance contract that permits HCC to recover the attorney's fees (or expert witness fees) it is incurring in the present action. HCC argues that there is such a contractual provision here, i.e., the provision in the Policy that obligates AOIC to pay "all reasonable expenses incurred by [HCC] at AOIC's request." However, that argument was rejected in Allstate Ins. Co. v. Huizar , 52 P.3d 816, 819 (Colo. 2002).
Similarly, HCC may not recover its attorney's fees in this case as damages if it prevails on its counterclaim for common law bad faith. See, e.g., Bernhard v. Farmers Ins. Exch. , 915 P.2d 1285, 1287 (Colo. 1996) (under the American rule, "an insured must bear the cost of attorney fees incurred in bringing a bad faith breach of insurance contract action.").
Contrary to an implication in AOIC's motion, Bernhard , however, does not bar the recovery of defense costs owed under contract within the duty to defend. Bernhard emphasized that in the Trimble line of cases, "the insured was forced to provide his own legal defense even though his *1338 insurance policy explicitly stated that the insurer would provide it. Thus, the attorney fees he sought to recover represented the actual legal defense the insurer should have provided for him." Bernhard , 915 P.2d at 1290.[5] The Colorado Supreme Court affirmed this point of law from the Trimble cases but distinguished this from a situation where the insured hired legal representation to force the insurer to provide benefits under the insurance policy. Id.
However, if HCC is successful in asserting its statutory claim for unreasonable delay or denial of an insurance benefit, it will be entitled by statute to an award of its attorney's fees and court costs. Colo. Rev. Stat. § 10-3-1116(1). See also Ermentraut v. State Farm Fire and Casualty Co. , No. 14-cv-00061-RM-KLM, 2016 WL 9735723, at *7 (D. Colo. Sept. 26, 2016) (holding that attorney's fees were not recoverable on a claim of bad faith breach of insurance contract but might be recoverable under plaintiff's statutory claim).
3) Loss of Earnings for Mr. Anderson's Time.
The Policy provides for coverage for loss of earnings incurred during litigation of $400 per day. ECF No. 27-2 at 17. Mr. Anderson, the owner of HCC, asserts that he spent 20 working days defending against the underlying action as well as this action. ECF No. 90 at 16. If Mr. Anderson contributed time to the defense of the underlying case at AOIC's request, and as a result he lost earnings that he otherwise would have had, then the policy provides for compensation for the lost earnings up to $400 per day. AOIC's argument that HCC never made a claim for these benefits (until HCC did so in this case), and therefore, there can't have been a breach of contract in failing to provide them, is not a valid defense. AOIC had denied that there is any coverage under the Policy, so a demand for this benefit would likely have been futile. At the very least there is a factual dispute here.
However, for the same reason that I have found that only legal expenses incurred in the underlying action are recoverable as a specific benefit of the Policy, I conclude that any time Mr. Anderson has spent on the defense of the present case or the prosecution of the counterclaims in the present case is not recoverable as a benefit of the policy. To that extent defendant's motion for summary judgment is granted.
E. HCC's Bad Faith Claims.
Lastly, AOIC argues that HCC's bad faith claims fail as a matter of law because it had a legal right to file this declaratory judgment action and its first amended complaint pursuant to Constitution Associates v. New Hampshire Ins. Co. , 930 P.2d 556 (Colo. 1996). I agree that AOIC had a legal right to file this action, and that its having done so cannot support a bad faith claim. If that is what HCC means when it argues that filing a "premature" declaratory judgment action was an act of bad faith, see ECF No. 90 at 19, then I dismiss the claim. However, to the extent that HCC's bad faith claims are premised on AOIC's allegedly unreasonable conduct in denying the benefits to which HCC was entitled under the terms of the Policy, not on AOIC's filing of this action as such, I do not dismiss the claims.
*1339 ORDER
AOIC's Motion for Summary Judgment, ECF No. 87, is GRANTED in part and DENIED in part. It is granted to the extent that HCC seeks recovery of Mr. Anderson's loss of earnings for time spent on the present action and to the extent it contends that the filing of AOIC's declaratory judgment action was an act of bad faith. It is denied otherwise.

AOIC describes this event as the "hangar floor started to bubble," ECF No. 87 at 2, and HCC asserts that "the floor coating bubbled, the concrete slab (the work of others) did not," ECF No. 90 at 2.

I do not understand why the plaintiff is pursuing both claims two and three. Although a covenant of good faith and fair dealing is implied in every contract in Colorado, Colorado courts have deemed bad faith breach of an insurance contract to be a tort. See, e.g., Goodson v. American Standard Ins. Co., 89 P.3d 409, 414-15 (Colo. 2004).

Contrary to an implication in AOIC's motion, ECF No. 87 at 7, my decision in D.R. Horton, Inc - Denver v. Mountain States Mutual Cas. Co. , 69 F. Supp. 3d 1179, 1194 (D. Colo. 2014), does not hold otherwise.

In its reply, AOIC argues that HCC's amended counterclaims cannot relate back because HCC never sought leave of the Court to assert these claims. ECF No. 96 at 3. Instead, HCC simply responded to AOIC's First Amended Complaint with its Answer and Amended Counterclaims. ECF No. 66. Perhaps leave to amend was required. Cf. Dakota Station II Condominium Assoc. Inc. v. Owners Ins. Co. , 2016 WL 9735776 at *2 (D. Colo. Nov. 4, 2016) (leave to add affirmative defenses in answer to amended complaint was required in the circumstances of that case). Regardless, AOIC did not move to strike the new counterclaims. AOIC filed an answer to HCC's amended counterclaims where it raised a defense of the statute of limitations without mentioning that it believes HCC should have obtained leave of the Court to assert these counterclaims. ECF No. 69. The Court concludes that AOIC implicitly waived, or at a minimum is estopped from now raising, that argument.

The "Trimble cases" refer to Farmers Group, Inc. v. Trimble , 658 P.2d 1370 (Colo. App. 1982) (Trimble I ), Farmers Group, Inc. v. Trimble , 691 P.2d 1138 (Colo. 1984) (Trimble II ), and Farmers Group, Inc. v. Trimble , 768 P.2d 1243 (Colo. App. 1988) (Trimble III ), overruled on other grounds by Goodson v. Am. Standard Ins. Co. of Wis. , 89 P.3d 409 (Colo. 2004).