**SPECIALIZED GRADING ENTER-PRISES, INC., Plaintiff–Appel-lant and Cross–Appellee,**

v.

**GOODLAND CONSTRUCTION, INC., Defendant–Appellee and Cross–Appellant.**

**Nos. 06CA0630, 06CA1017.**

Colorado Court of Appeals, Div. III.

Nov. 1, 2007.

Certiorari Denied April 7, 2008.

Ricardo M. Barrera, LLC, Ricardo M. Barrera, Denver, Colorado; Ogborn, Summerlin & Ogborn, L.L.C., Michael J. Ogborn, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Scott R. Larson, P.C., Scott R. Larson, Denver, Colorado; Recht & Kornfeld, P.C.,

Heather R. Hanneman, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge ROY.

Plaintiff, Specialized Grading Enterprises, Inc. (the subcontractor), appeals the trial court's judgment entered on a directed verdict in favor of defendant, Goodland Construction, Inc. (the contractor), on its quantum meruit claim. The contractor appeals from the denial of its motion for directed verdict on the contract claim, the denial of its motion for summary judgment on the quantum meruit claim, and an evidentiary ruling concerning one of the subcontractor's witnesses. We reverse and remand for a trial on the subcontractor's quantum meruit claim and otherwise affirm.

The contractor entered into a contract (general contract) with the City of Northglenn (the City) to rehabilitate the Webster Lake & E.B. Rains Jr. Memorial Park (the project). The project required that the lake be deepened and reshaped. The subcontractor entered into a subcontract based on a unit price for each cubic yard of dirt excavated and incorporated into embankments in accordance with the specifications. The subcontract was capped at $162,400. The subcontractor began work on August 25, 2000, and was discharged on October 23, 2000.

The subcontractor commenced this consolidated proceeding for damages under a number of claims, but only its claims for breach of contract and quantum meruit went to trial. The damages sought in those claims were $128,819 for breach of contract, and $90,274 on quantum meruit, for a total of $219,093.

The subcontractor claimed $86,554 for "cutting" and $42,265 for "filling," or $128,819 as contract damages for work completed as of the date of discharge. The jury awarded $93,570, which, taken with the $50,000 previously paid by the contractor, brought the total compensation paid to the subcontractor for completed work to $143,570.

The quantum meruit claim was premised on extra work occasioned by the failure of the contractor to have the site dewatered

prior to the arrival of the subcontractor. The subcontractor alleged that saturated soil is more difficult to cut, is heavier to move, and is unusable as fill without first being allowed to dry. In addition, the subcontractor alleged that it participated in dewatering the site so it could perform its earth-moving operations.

The trial court granted a directed verdict on the subcontractor's quantum meruit claim based on its interpretation of *Scott Co. v. MK–Ferguson Co.,* 832 P.2d 1000 (Colo.App. 1991) (*Scott,*) and the authorities cited therein.

I.

■ The subcontractor argues that the trial court erred in granting the contractor's motion for a directed verdict on its quantum meruit claim. We agree.

A motion for directed verdict can be granted only if the evidence, when considered in a light most favorable to the non-moving party, compels the conclusion that reasonable persons could not disagree and that no evidence, or legitimate inference therefrom, has been presented upon which a jury's verdict against the moving party could be sustained.

*Burgess v. Mid–Century Ins. Co.,* 841 P.2d 325, 328 (Colo.App.1992) (citing *Romero v. Denver & Rio Grande Western Ry.,* 183 Colo. 32, 37, 514 P.2d 626, 628–29 (1973); *Pierce v. Capitol Life Ins. Co.,* 806 P.2d 388, 390 (Colo.App.1990)).

■ If an express contract exists, there can be no implied contract covering the same subject matter between the parties because the provisions of the express contract supersede those of the implied contract; however, this rule does not apply if the implied agreement is based upon the conduct of the parties subsequent to, and not covered by, the terms of the express contract. *Scott,* 832 P.2d at 1002 (citing *Schuck Corp. v. Sorkowitz,* 686 P.2d 1366, 1368 (Colo.App.1984)).

■ Quantum meruit is an appropriate basis for recovery when substantial changes occur that are not covered by the contract and are not within the contemplation of the parties, and when the effect of such changes

is to require extra work or to cause substantial loss to one party. *Scott*, 832 P.2d at 1002–03 (citing *Hensel Phelps Constr. Co. v. King County*, 57 Wash.App. 170, 787 P.2d 58, 61 (Wash.Ct.App.1990)). Whether a subcontractor can recover under a quantum meruit claim is a mixed question of law and fact. *Scott*, 832 P.2d at 1003. Also, interpretation of a written contract and whether such a contract is ambiguous are questions of law for the court. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313–14 (Colo. 1984). This court is not bound by the trial court's findings or conclusions as to those issues. *Barnes v. Van Schaack Mortgage*, 787 P.2d 207, 209 (Colo.App.1990).

Prior to trial, the contractor filed a motion for summary judgment on the quantum meruit claim arguing that the damages were too speculative and that the judgment should be granted as a sanction for alleged discovery abuses. The trial court denied the motion.

■ The contractor then moved for a directed verdict at the close of the subcontractor's case, again arguing insufficiency of the evidence and relying, for the first time, on *Scott*. The contractor argued that the requirement that the site be dewatered was clearly contemplated by the parties because it was expressly provided for in the general contract, which was incorporated into the subcontract. The contractor further argued that, because the general contract contained a change order procedure, there was an adequate contractual remedy. In support of this argument, the contractor noted that the parties had submitted a change order to the City, which it rejected on the basis that, as to the City, the contract required dewatering and the parties should have anticipated that there would be waterlogged soil at the bottom of a lake. Therefore, the contractor argued that the claim of quantum meruit did not lie.

The trial court granted the motion and dismissed the quantum meruit claim. The court initially indicated that the subcontractor might be able to bring the claim for damages under the breach of contract claim, but ultimately foreclosed that avenue as well.

In our view, *Scott* is distinguishable. There, a mechanical subcontractor contracted to install brewery process piping during the construction of a new brewery. The subcontractor alleged that it experienced delays and had to perform extra work because the plans and specifications were defective, unclear, and frequently changed. The subcontractor brought an action for breach of express contract, promissory estoppel, goods sold and delivered and services rendered, negligence, and negligent misrepresentation, all of which were submitted to the jury. The jury awarded over $1.5 million on all claims without allocation, although, apparently, no damages were awarded on the negligence claims.

A division of this court stated that the subcontractor's claim for goods sold and delivered and services rendered was, in essence, a quantum meruit claim and could not be brought if there was a contract provision covering the matter. The division also concluded that the promissory estoppel claim was in the nature of a tort or quasi-contract action and was similarly limited and, in addition, was subject to the economic loss rule, which separately precluded recovery of economic damages. *See Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301 (Colo.App.1988).

The division further concluded that the subcontract contemplated that the plans would change, have errors, or be unclear and, therefore, would require additional work and material of the subcontractor. The contract there contained a change order procedure by which additional compensation could be obtained from the owner or general contractor in those eventualities. Then, because the division could not determine on which claims the jury had awarded damages, or allocate the damages among the claims, it remanded the matter for a new trial on the breach of express contract claim.

After summarizing the provisions of the contract which contemplated errors and changes in the plans and specifications in some detail together with the change order procedures, the *Scott* division stated:

> These provisions are unambiguous and cover the issues of errors in the drawings, acceleration of performance, and compensation of plaintiff for additional cost.

Hence, these issues were contemplated by the parties, and therefore, the court erred in allowing plaintiff to proceed on theories of goods sold and delivered and services performed and promissory estoppel.

*Scott*, 832 P.2d at 1005.

As in *Scott*, the subcontract here had provisions dealing with changes in the work. The subcontract here provided that (1) the City could make changes in the work by issuing modifications to the general contract; (2) the contractor may order the subcontractor in writing to make changes in the work within the general scope of the subcontract; and (3) in the event of (1) or (2), the subcontractor could claim additional costs within such time and in a form to permit the contractor to make appropriate claims to the City. However, neither (1) nor (2) occurred. The City did not change the plans, the specifications, or the terms of the general contract, and the contractor did not issue any written changes in the work to the subcontractor.

On appeal, the contractor does not assert that the incorporation of the general contract into the subcontract means that the subcontractor is responsible for the dewatering. Indeed, the contractor admits that it was *"[the contractor's] duty to 'de-water' the lake [and that duty] extended not only to the City, but also to [the subcontractor]."* (Emphasis added.)

Here, the extra work claimed was not occasioned by changes, errors, or lack of clarity in the plans, design, or specifications for the project. The subcontractor could not have reasonably anticipated that the contractor would breach its contractual obligations if, indeed, it did so.

Witnesses, whether for the contractor or subcontractor, testified that the failure to dewater the site would have caused the subcontractor delay and additional expense. Further, the contractor and subcontractor both engaged in dewatering activities, including digging drainage ditches, digging sumps, and installing pumps after the subcontractor commenced work. Therefore, the contractor was aware of the problem and the subcontractor's efforts to remedy it. It is also apparent, and the contractor concedes as much, that the dewatering was not within the scope of the subcontractor's work.

Moreover, the quantum meruit damages were separate and identifiable in the evidence. Indeed, in closing argument, counsel for the contractor expressly informed the jury, "[a] lot of muck that's been slung around over the last three days is no longer really relevant to the issues in this case. There isn't any claim for extra time, *there's no more quantum meruit claim for that ninety thousand plus dollars,* that has been dismissed." (Emphasis added.)

Therefore, we conclude that the trial court erred in directing a verdict on the subcontractor's quantum meruit claim for extra work when the subcontractor's performance of the work was not contemplated in the contract.

## II.

On cross-appeal, the contractor argues that the trial court erred by denying its motion for dismissal of the breach of contract claim at the close of the subcontractor's evidence, and by denying the contractor's motion for summary judgment on the subcontractor's quantum meruit claim.

■ We conclude that neither of these orders is a final order and, therefore, neither is appealable even after final judgment is entered. *See Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.,* 962 P.2d 983, 991 (Colo. App.1997).

## III.

The contractor also argues on cross-appeal that the trial court erred in allowing one of the subcontractor's employees to testify to an estimate of the percentage of work the subcontractor performed prior to its termination. We disagree.

Specifically, the contractor argues that the testimony required specialized knowledge and training related to the calculation of the volume of earth moved and placed prior to termination. Therefore, according to the contractor, the testimony was expert testimony under CRE 702 and it was error for the

trial court to admit the testimony as a lay person's opinion under CRE 701.

■ A reviewing court may not disturb a trial court's admission of evidence pursuant to CRE 701 absent an abuse of discretion. *People v. Hoskay,* 87 P.3d 194, 197 (Colo. App.2003) (citing *Robinson v. People,* 927 P.2d 381, 384 (Colo.1996)). A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993).

■ If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences that are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. *People v. Tallwhiteman,* 124 P.3d 827, 832 (Colo.App. 2005) (citing *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002); *Farley v. People,* 746 P.2d 956, 958 (Colo.1987); *People v. Hoskay,* 87 P.3d at 197). Here, the contractor asserts that the testimony was based on scientific, technical, or other specialized knowledge.

■ Before allowing the witness to testify, the trial court found with record support that (1) the witness had first-hand knowledge of the project; (2) the witness had specialized knowledge; and (3) his testimony would help the trier of fact. The trial court further stated that "you are not an expert witness just because you have specialized knowledge."

The witness testified as to the percentage of the job that was completed and the volume of earth moved. He testified that he reviewed certain documents and timesheets, as well as performed spot surveys and field observations to reach his conclusions.

From our review of the record, we conclude that the trial court did not abuse its discretion in allowing this witness to testify as a lay person pursuant to CRE 701. The witness's testimony was rationally based on his own perception of the project as well as his experience in the earth-moving business, and it also assisted the jury's understanding of the case. In our view, the fact that the witness took measurements in order to calculate the volume of earth cut and filled did not, by itself, require that he be qualified as an expert witness. Nor did his method of performing the calculations and multiplying that volume by the contract price require that he be qualified as an expert, because it was a relatively simple mathematical problem that involved "a process of reasoning familiar in everyday life." *People v. Rincon,* 140 P.3d 976, 983 (Colo.App.2005) (quoting Fed.R.Evid. 701 advisory committee note).

Therefore, the judgment is reversed as to the subcontractor's quantum meruit claim for damages for extra work performed and time expended due to the failure of the contractor to dewater the project, and the case is remanded for a trial on that claim. The judgment is affirmed in all other respects.

Judge TAUBMAN and Judge TERRY concur.