2012 COA 102

**Gene MELSSEN and Diane Melssen, d/b/a Melssen Construction, Plaintiffs–Appellees,**

v.

**AUTO–OWNERS INSURANCE COMPANY, an insurance company licensed to conduct business in Colorado, Defendant–Appellant.**

Nos. 11CA0123, 11CA0864.

Colorado Court of Appeals, Div. I.

June 21, 2012.

Ranson & Kane, P.C., Richard P. Ranson, Jason P. Kane, Amanda B. Janulis, Colorado Springs, Colorado, for Plaintiffs–Appellees.

Gregory R. Giometti & Associates, P.C., Gregory R. Giometti, Mark Honhart, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

¶ 1 In this action concerning the breach of an insurance contract, defendant, Auto–Owners Insurance Company (Auto–Owners), appeals the trial court's judgment entered on a jury verdict in favor of plaintiffs, Gene and Diane Melssen, doing business as Melssen Construction (the Melssens). We affirm and remand for an award of reasonable appellate attorney fees and costs.

## I. Background

¶ 2 The Melssens built the Holleys a custom home. During construction, the Melssens retained comprehensive general liability (CGL) coverage with Auto–Owners. Their policy, effective through November 2004, obligated Auto–Owners to defend the Melssens with respect to any "suit" seeking damages for "property damage" occurring during the policy period. The extent of Auto–Owners' obligation to defend the Melssens under the policy in the Holleys' lawsuit against them is the focus of this appeal.

¶ 3 Soon after the house was constructed, cracks developed in the drywall. Eventually, large cracks appeared in the outside stucco and basement slab.

¶ 4 In 2007, the Holleys contacted the Melssens, the engineer for the foundation, an attorney, and finally, Auto–Owners. An Auto–Owners claims adjuster began investigating the claim.

¶ 5 In April 2008, the Holleys, through counsel, sent the Melssens a notice of claim in accordance with the Colorado Defect Action Reform Act (CDARA), section 13–20–803.5, C.R.S.2011. The notice consisted of a letter asserting that approximately $300,000 in damages to the Holleys' property was caused by the Melssens' engineering and construction defects, a list of estimated damages and repairs, and two reports by the Holleys' consultants opining on the nature of the defects.

¶ 6 In June 2008, the Melssens, through their attorney, demanded Auto–Owners defend and indemnify the Melssens and forwarded Auto–Owners the notice of claim. Auto–Owners did not deny coverage, but also did not inspect the property or become actively involved in adjusting the claim.

¶ 7 In October 2008, Auto–Owners sent the Melssens a "coverage position letter," purportedly denying coverage of claimed damages because they were sustained outside the policy period.

¶ 8 Thereafter, the Holleys agreed to an arbitration and mediation settlement with the Melssens and the foundation engineer. The Melssens paid $140,000 toward the cost of the settlement, but Auto–Owners did not receive advance copies of the settlement documents.

¶ 9 The Melssens filed this action against Auto–Owners in 2009, asserting breach of contract, bad faith breach of contract, and violations of sections 10–3–1115 and 10–3–1116, C.R.S.2011. The Melssens' CGL policy provided:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend "any suit" seeking those damages.

The definition section provides:

> "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which the insurance applies are alleged. "Suit" includes:
>
> a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or
>
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

¶ 10 After a three-day trial, a jury returned a verdict in favor of the Melssens on all claims and awarded them damages. The

trial court awarded the Melssens costs and attorney fees.

¶ 11 In 2010, the General Assembly amended the CDARA by adding, in part, section 13–20–808, C.R.S.2011. This section provides courts with guidance when interpreting liability policies issued to construction professionals. *See generally* Ronald M. Sandgrund & Scott F. Sullan, *H.B. 10–1394: New Law Governing Insurance Coverage for Construction Defect Claims*, 39 Colo. Law. 89 (Aug. 2010).

II. "Suit" Triggering the Duty to Defend

¶ 12 Auto–Owners contends the trial court erred in submitting to the jury the issue whether the CDARA notice of claim process between the Melssens and the Holleys constituted a "suit" triggering Auto–Owners' obligation to defend under the terms of their policy. We conclude that the trial court properly submitted to the jury the question of whether Auto–Owners consented to the submission of their dispute to "any other alternative dispute resolution proceeding" or whether Auto–Owners waived that policy provision. However, we conclude that the trial court erred in submitting to the jury the question whether the CDARA notice of claim process otherwise constituted a "suit" under the policy, but we further conclude the error was harmless because the CDARA notice is a "suit" within the definition of the policy.

A. Standard of Review

¶ 13 "In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations." *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991). An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might be held to indemnify the insured. *Id.*

¶ 14 The determination of a duty to defend may rest on the interpretation of the insurance policy's terms and on whether the terms are ambiguous. *Id.*

¶ 15 The interpretation of an insurance policy is a matter of law we review de novo. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo.2003).

¶ 16 Whether there is a factual basis warranting coverage of the insured is a question of fact to be decided by the trier of fact. *See Hecla*, 811 P.2d at 1090. Our review of a factual coverage issue is therefore limited to determining whether the trier of fact committed clear error. *See One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1288 (Colo.App.2011). Under this standard, factual findings are "binding unless so clearly erroneous as not to find support in the record." *Lyon v. Amoco Prod. Co.*, 923 P.2d 350, 353 (Colo.App.1996).

B. Analysis

¶ 17 As an initial matter, we reject the Melssens' contention that Auto–Owners invited any error in having the jury decide whether the CDARA notice of claim process was a "suit." Auto–Owners moved the trial court in limine to preclude the Melssens from arguing that the CDARA notice of claim was the functional equivalent of a complaint commencing a "suit" within the definition of the Auto–Owners policy. The court denied its motion and permitted the jury to decide the issue. Although Auto–Owners then requested permission to argue that the CDARA notice of claim process was not a "suit," its motion in limine preserved its argument for appeal. *See Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1331 (Colo.1986).

¶ 18 Because interpretation of the insurance policy's terms was a legal matter, we agree with Auto–Owners that the trial court erred in requiring the jury to decide whether the CDARA notice of claim process was a "suit" under the Melssens' insurance policy.

¶ 19 However, reversal is warranted only if the result might have differed absent the error. C.R.C.P. 61; *see Joseph v. Viatica Mgmt., LLC*, 55 P.3d 264, 268 (Colo.App. 2002).

¶ 20 Auto–Owners contends the trial court's error was not harmless because (1) the CDARA notice of claim process was not a civil proceeding under the policy, (2) the

Melssens never obtained consent as required by the policy, and (3) the liberal interpretation of a CDARA notice of claim in section 13–20–808(7), C.R.S.2011, does not apply retroactively to this policy. We address each of its contentions in turn.

### 1. A "Civil Proceeding" Under the Policy

¶ 21 Auto–Owners contends that the CDARA notice of claim process was not a civil proceeding because the notice of claim was not a complaint nor was the claim process otherwise an alternative dispute resolution proceeding under the policy. Therefore, it maintains, the trial court erred in submitting this issue to the jury.

¶ 22 Contrary to Auto–Owners contention, we conclude the CDARA notice of claim process constituted an alternative dispute resolution proceeding under the policy. Because the jury verdict was in favor of the Melssens, we further conclude that the presentation of this question to the jury constituted harmless error. *See* C.R.C.P. 61.

### 2. Absence of a Complaint

¶ 23 To determine whether a duty to defend exists, we ordinarily consider whether the factual allegations in the underlying complaint against the insured trigger coverage under an insurance policy's terms. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 502 (Colo.2004); *see also Cyprus Amax Minerals Co.*, 74 P.3d at 299 (look to the four corners of the underlying complaint).

¶ 24 Auto–Owners contends the so-called complaint rule precludes coverage because the Melssens were never served with a complaint in a civil proceeding. Rather, it asserts, the Melssens only received the CDARA notice of claim.

¶ 25 The premise of the complaint rule is that "[t]he source of the insurer's duty to defend is contractual, deriving from the insurance policy itself." *Thompson*, 84 P.3d at 502. Accordingly, we are not constrained from construing the CDARA notice of claim process as a civil proceeding triggering the duty to defend, absent the existence of a complaint, if the insurance policy so provides.

¶ 26 Under the policy's language, contrary to Auto–Owners' contention, a "suit" is not limited to a civil complaint. The policy refers broadly to "a civil proceeding," not a civil action. *See Black's Law Dictionary* 1324 (9th ed. 2009) (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3–4 (2d ed. 1899)) ("[a proceeding] is more comprehensive than the word 'action' "). Additionally, it expressly includes "any other alternative dispute resolution proceeding in which ... damages are claimed and to which [the insured] submit[s] with [Auto–Owners'] consent."

### 3. Existence of an Alternative Dispute Resolution Proceeding

¶ 27 For the foregoing reasons, we also reject Auto–Owners' contention that the policy precludes coverage because the CDARA notice of claim process serves only as a condition precedent to serving a complaint against a construction professional. Rather, the CDARA notice of claim process constitutes an alternative dispute resolution proceeding, as well.

¶ 28 An "alternative dispute resolution proceeding" is "a procedure for settling a dispute by means other than litigation, such as arbitration or mediation." *Black's Law Dictionary* at 91; *see* 1 *Alternative Dispute Resolution* § 1:1 (3d ed. 2011) ("procedures for resolving disputes short of trial in the public courts").

¶ 29 Under the CDARA notice of claim process, a property owner must serve the construction professional with a written notice of claim at least seventy-five days before filing an action. § 13–20–803.5(1), C.R.S.2011. The notice of claim must reasonably describe the alleged defect and the alleged injuries or damages caused by the defect. § 13–20–802.5(5), C.R.S.2011. The construction professional may then inspect the property. § 13–20–803.5(2), C.R.S.2011. Following completion of the inspection process, the construction professional, as applicable here, has thirty days either to submit an offer to resolve the claim by paying a sum or to agree to remedy the defect. § 13–20–803.5(3), C.R.S.2011; *see also Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186, 1192 (Colo.

2010). If the construction professional does not make such an offer, the homeowner rejects the offer, or the construction professional does not comply with its offer to remedy or settle the claim, only then may the homeowner bring an action against the construction professional. § 13–20–803.5(6)–(7), C.R.S.2011.[1]

¶ 30 The General Assembly enacted this amendment in 2003 to "encourage[ ] resolution of potential defect claims before suit is filed." *Smith*, 230 P.3d at 1192; *accord Shaw Constr., LLC v. United Builder Services, Inc.*, 2012 COA 24, ¶ 25, —— P.3d ——, ——, 2012 WL 311665 ("the CDARA established procedures that facilitate out-of-court resolution of construction defect claims"); *Land–Wells v. Rain Way Sprinkler & Landscape, LLC*, 187 P.3d 1152, 1154 (Colo.App. 2008); *see generally* Ronald M. Sandgrund & Scott F. Sullan, *The Construction Defect Action Reform Act of 2003*, 32 Colo. Law. 89, 91 (July 2003).

¶ 31 Consistent with section 13–20–803.5's language and purpose, we conclude that, as a matter of law, the CDARA notice of claim process constitutes an alternative dispute resolution proceeding.

### 4. Consent

█ ¶ 32 Auto–Owners maintains the CDARA notice of claim process nonetheless fails to satisfy the policy's definition of "suit" under these circumstances because there was no evidence to show that the Melssens submitted to and settled the Holleys' claim against them with its express or implicit consent. We disagree.

¶ 33 This issue presents a question of fact, which we review for clear error. *Hecla*, 811 P.2d at 1090.

¶ 34 It is undisputed that Auto–Owners did not expressly consent to the Melssens' involvement in the CDARA notice of claim process or in their ultimate settlement with the Holleys. However, to trigger insurance coverage under the policy, consent may also be deemed implied or an insurer may waive a

consent requirement in a policy. *See Raitz v. State Farm Mut. Auto. Ins. Co.*, 960 P.2d 1179, 1186 (Colo.1998) (under the "initial permission rule," coverage under the No–Fault Act extends to subsequent permittees of a driver initially permitted by a named insurer to drive an insured vehicle on public highways because they have implied permission from the named insured to use the vehicle); *Colard v. American Family Mut. Ins. Co.*, 709 P.2d 11 (Colo.App.1985) (rejecting defense of untimely notice of suit after denial of coverage). The Melssens argued and presented evidence to the jury supporting both implied consent and waiver.

¶ 35 First, as to implied consent, in response to Auto–Owners' motion for directed verdict, the Melssens argued, in part, that Auto–Owners impliedly consented to the CDARA notice of claim process under the policy because the claims adjuster knew of, and did not object to, the Melssens' intention to investigate the Holleys' property damage claim and pursue settlement discussions with them. The Melssens reiterated this contention in closing argument.

¶ 36 Auto–Owners did not contemporaneously object to their argument or request a jury instruction restricting the jury's finding on the element of consent to express consent.

¶ 37 Accordingly, we conclude that there was sufficient evidence in the record to raise a question of fact for the jury whether Auto–Owners impliedly consented to the Melssens' notice of claim process. *See Reigel v. SavaSeniorCare L.L.C.*, —— P.3d ——, ——, 2011 WL 6091709 (Colo.App.2011) (unless the facts are undisputed and reasonable minds could draw but one inference from them, a jury must decide a question of fact).

█ ¶ 38 Second and alternatively, as to waiver, the Melssens argued at trial that they could be excused from obtaining Auto–Owners' consent to the CDARA notice of claim process and the ultimate mediation settlement because Auto–Owners waived enforcement of the consent requirement by rejecting their claim on other grounds. Auto–

1. To ensure compliance with this provision, any action filed without compliance to section 13–20–803.5 is automatically stayed, and the filing of a notice of claim tolls the statute of limitations. §§ 13–20–803.5(9), 13–20–805, C.R.S.2011; *see Smith*, 230 P.3d at 1192.

Owners renews the objection it raised at trial that the policy prohibited waiver.

■■■ ¶ 39 An insurer waives its right to argue that its insured failed to give the required notice under a policy if it denied liability on the basis of lack of coverage and did not assert the noncompliance defense until after judgment was entered against its insured. *Colard,* 709 P.2d at 15; *accord Flatiron Paving Co. v. Great Sw. Fire Ins. Co.,* 812 P.2d 668, 671 (Colo.App.1990). We conclude the same rationale applies when, as here, an insured fails to obtain the insurer's consent under the terms of the policy because the insured reasonably believes the insurer has denied coverage on other grounds.

¶ 40 The Melssens argued this theory at trial, contending that Auto–Owners denied them coverage as early as March 2008 and definitively in October 2008, and thereafter they were excused from obtaining Auto–Owners' consent.

¶ 41 In support of their argument, the Melssens presented the following evidence. In March 2008, Auto–Owners sent the Holleys a letter suggesting the property damage was not covered because it occurred outside the policy period. The Auto–Owners claims adjuster testified he did not change his position after investigating further. In June 2008, the Melssens demanded Auto–Owners defend and indemnify them, sent it the Holleys' CDARA notice of claim, and notified Auto–Owners that the Melssens were inspecting the property.

¶ 42 In October 2008, Auto–Owners sent the Melssens a final letter, stating, in part:

> We have recently completed our investigation and determined there is no coverage for the damage to the foundation [or to the vinyl fence].... Since the damage occurred outside of your policy period, there is no coverage.

The letter is substantially identical to the form "coverage denial letter" found in the Auto–Owners claims manual. Auto–Owners also contacted the Melssens in March 2009 after it became aware of the settlement and stated:

> [A]s we had not heard anything further [following our October 2008 letter], we proceeded to close our file in this matter, believing you understood and agreed with our coverage position. Absent any information from you to the contrary, we stand by our previous coverage opinion. . . .

¶ 43 Under these circumstances, whether Auto–Owners denied the Melssens coverage, and therefore whether the Melssens were excused from obtaining consent, were questions of fact for the jury to decide. *Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co.,* 12 P.3d 824, 829 (Colo.App.2000) ("Whether there is a justifiable excuse for failing to give timely notice is generally a question of fact. . . ."); *see also Hecla,* 811 P.2d at 1090. Because the record supports the jury's answers in the affirmative, we perceive no error in its findings. *See Lyon,* 923 P.2d at 353.

### 5. Retroactivity of CDARA

¶ 44 Section 13–20–808(7)(a)(I), C.R.S.2011, enacted in 2010, provides:

> An insurer's duty to defend a construction professional or other insured under a liability insurance policy issued to a construction professional shall be triggered by a potentially covered liability described in: (I) A notice of claim made pursuant to section 13–20–803.5. . . .

Having determined that the CDARA notice constitutes a "suit" under the insurance policy and that the Melssens did not need Auto–Owners' consent to submit to an alternative dispute resolution proceeding because it had already denied coverage, we need not address the Melssens' contention that the 2010 CDARA amendments apply retroactively to the policy at issue here. *Cf. TCD, Inc. v. American Family Mut. Ins. Co.,* 2012 COA 65, ¶ 24, —— P.3d ——, ——, 2012 WL 1231964; *see Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.,* 661 F.3d 1272, 1281 (10th Cir.2011).

### III. Jury Instructions

¶ 45 Auto–Owners next contends the trial court abused its discretion in erroneously instructing the jury it could excuse the Melssens' failure to perform their duties under

the insurance policy. We discern no error or abuse of discretion.

## A. Standard of Review

¶ 46 We review de novo whether a particular jury instruction correctly states the law by examining whether the instructions as a whole accurately informed the jury of the governing law. *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo.2011). A trial court has broad discretion to determine the form and style of jury instructions. *Id.* Therefore, we review a trial court's decision to give a particular jury instruction for an abuse of discretion. *Id.* A trial court's ruling on jury instructions is an abuse of discretion only when the ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

## B. Analysis

¶ 47 Under Instruction 11, to find Auto-Owners liable for the breach of contract claim, the jury was required to find by a preponderance of the evidence that (1) Auto-Owners agreed to defend against any "suit" brought against the Melssens for property damage occurring during the policy period, (2) a "suit" fitting the policy definition was filed, (3) Auto-Owners failed to defend the Melssens against the suit, and *either* (4) the Melssens substantially performed their duties under the insurance policy, including providing notice of the "suit," *or* (5) the Melssens were excused from performing their duties because Auto-Owners erroneously denied coverage.

¶ 48 Instruction 12 instructed the jury that to succeed on the breach of contract claim, the Melssens had to prove Auto-Owners failed to pay money when the Melssens became legally obligated for "property damages" that occurred within the policy period. It also required the jury to find that *either* the Melssens substantially performed their duties, including providing notice of the occurrence and any "suit," and obtaining Auto-Owners' consent before assuming any obligation, *or* the Melssens were excused because Auto-Owners erroneously denied coverage.

¶ 49 Auto-Owners contends these instructions were erroneous because they presented Auto-Owners' failure to provide coverage as a defense to the Melssens' failure to substantially perform the policy terms.

¶ 50 However, as discussed above, an insured's failure to comply with the provisions of an insurance contract relieves the insurer from liability under the contract, unless there is a justifiable excuse for noncompliance. *Colard,* 709 P.2d at 15. Justifiable excuse includes the reasonable belief that the insurer denied coverage. *See id.* Accordingly, the instructions were not erroneous as a matter of law. We therefore perceive no error or abuse of discretion.

## IV. Rebuttal Testimony

¶ 51 Auto-Owners next contends the trial court abused its discretion in admitting Paul Bryant's rebuttal testimony because it exceeded the scope of allowable rebuttal testimony and the Melssens failed to disclose him as an expert for their case-in-chief. We disagree.

## A. Standard of Review

¶ 52 We review for abuse of discretion a trial court's decision to admit evidence, including rebuttal testimony. *People v. Welsh,* 80 P.3d 296, 304 (Colo.2003). Reversal is warranted if the court's decision was "manifestly arbitrary, unreasonable, or unfair." *Id.*

¶ 53 Because a trial court acts within its discretion to admit or preclude an expert witness not disclosed in a timely manner, we also reverse any such decision for abuse of that discretion. *Trattler v. Citron,* 182 P.3d 674, 681, 683 (Colo.2008).

## B. Analysis

¶ 54 Rebuttal evidence is admitted at the trial court's discretion, and may take a variety of forms, including "any competent evidence which explains, refutes, counteracts, or disproves the evidence put on by the other party, even if the rebuttal evidence also tends to support the party's case-in-chief." *Welsh,* 80 P.3d at 304 (quoting *People v. Rowerdink,* 756 P.2d 986, 994 (Colo. 1988)). The offering party must demonstrate

the evidence is relevant to rebut a specific claim, theory, witness, or other evidence of the adverse party. *Welsh,* 80 P.3d at 304.

¶ 55 A lay witness may testify broadly to any opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to clearly understand the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. *Specialized Grading Enterprises, Inc. v. Goodland Constr., Inc.,* 181 P.3d 352, 357 (Colo.App.2007). A lay witness may nonetheless testify as to his or her specialized knowledge if the basis for his or her opinion involves "a process of reasoning familiar in everyday life." *Id.* (quoting *People v. Rincon,* 140 P.3d 976, 983 (Colo.App.2005)).

¶ 56 In contrast, an expert witness may testify concerning matters of scientific, technical, or other specialized knowledge that will assist the trier of fact to determine a fact in issue. CRE 702. A party presenting an expert must timely disclose his or her identification, qualifications, relevant reports, and information considered in forming the basis of his or her opinion. C.R.C.P. 26(a)(2); *see Trattler,* 182 P.3d at 677.

¶ 57 The Melssens presented Bryant as a lay witness. Additionally, they presented him as a specially retained expert witness for the purpose of rebutting Auto–Owners' expert, Peter Marxhausen. The trial court permitted him to testify once in the Melssens' case-in-chief, in his dual capacities, for the sake of efficiency.

¶ 58 Auto–Owners contends Bryant exceeded the scope of rebuttal because he testified concerning information and opinions not disclosed in his rebuttal report. Specifically, he testified that he had observed diagonal cracks in the Holleys' foundation in 2008 and, based thereon, opined the damage occurred before 2004, that is, during the policy period.

¶ 59 Even if we assume Bryant exceeded the proper scope of rebuttal testimony, to the extent he testified about his personal knowledge and observations of the cracks in the foundation, his testimony was proper as that of a lay witness. CRE 701.

¶ 60 To the extent Bryant testified as an expert beyond the scope of rebuttal, the Melssens failed to comply with C.R.C.P. 26's disclosure requirements. However, failure to disclose evidence in a timely fashion need not be sanctioned if the error was harmless. C.R.C.P. 37(c); *see Trattler,* 182 P.3d at 683 (preclusion of expert witnesses for failure to disclose may be a "disproportionate sanction").

¶ 61 When the court evaluates whether a failure to disclose evidence is harmless, the inquiry is not whether the new evidence is potentially harmful to the opposing side's case. The question is whether the failure to timely disclose the evidence will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence. *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 979 (Colo. 1999).

¶ 62 Bryant's 2008 reports contained his opinion on the cause of damage to the Holleys' foundation and were provided to Auto–Owners in the initial· disclosures. After receiving Bryant's rebuttal report, Auto–Owners deposed Bryant. Auto–Owners therefore had an adequate opportunity to question Bryant about, and thereafter to defend against, his expert opinions. In any event, Bryant's testimony about the date property damage occurred was cumulative, because three other witnesses testified similarly.

¶ 63 Therefore, any error in admitting Bryant's testimony absent C.R.C.P. 26(a) disclosures was harmless.

## V. C.R.C.P. 59 Motion

¶ 64 Because we perceive no error or, at most, harmless error, by the trial court, we conclude the trial court properly denied Auto–Owners' C.R.C.P. 59 motion for a new trial or, in the alternative, judgment notwithstanding the verdict.

## VI. Attorney Fees and Costs

¶ 65 Finally, Auto–Owners contends the trial court abused its discretion in awarding attorney fees to the Melssens in the amount of $117,300 and costs in the amount of

$14,182.82 because the Melssens' witnesses were not sufficiently credible, the contingency fee agreement should have controlled the award, and the sums awarded were unreasonable. We disagree.

¶ 66 We also grant the Melssens' request for their appellate attorney fees.

### A. Standard of Review

¶ 67 The determination of what constitutes reasonable attorney fees "is a question of fact for the trial court and will not be disturbed on review unless it is patently erroneous and unsupported by the evidence." *Hartman v. Freedman*, 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979); *accord Atmel Corp. v. Vitesse Semiconductor Corp.*, 160 P.3d 347, 349 (Colo.App.2007). Thus, we review for abuse of discretion the reasonableness of the amount of attorney fees awarded. *Brody v. Hellman*, 167 P.3d 192, 198 (Colo. App.2007).

¶ 68 An award of costs to the prevailing party is also within the trial court's discretion and will not be overturned absent a clear abuse of that discretion. *GF Gaming Corp. v. Taylor*, 205 P.3d 523, 526 (Colo.App. 2009).

### B. Analysis

¶ 69 Because the reasonableness of attorney fees and costs was a question of fact, issues relating to the credibility of witnesses and the weight of the evidence concerning fees and costs were within the province of the trial court. *See Dahl v. Young*, 862 P.2d 969, 971 (Colo.App.1993). We thus reject Auto–Owners' contention that the trial court abused its discretion in finding the Melssens' witnesses more credible than the expert witness of Auto–Owners.

¶ 70 We also reject Auto–Owners' contention that the trial court abused its discretion in not adhering to the terms of the contingent fee agreement. Auto–Owners concedes that a contingent fee agreement serves only as one factor in the trial court's determination of whether fees and costs are reasonable. *See City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1115 (Colo.1996); *see also* Colo. RPC 1.5.

¶ 71 In awarding attorney fees, the trial court may consider, among other factors, the amount in controversy, the duration of representation, the complexity of the case, the value of the legal services to the client, and the usage in the legal community concerning fees in similar cases. *Hartman*, 197 Colo. at 281, 591 P.2d at 1322. No one of these factors is conclusive. *Id.*

¶ 72 Here, the trial court found the Melssens' counsel's rates reasonable with respect to each of these enumerated factors. It also found it unreasonable to reduce the lodestar amount further in light of counsel's voluntary reduction of $39,000.

¶ 73 Auto–Owners nonetheless contends the trial court's award was unreasonable because it did not reflect that fifty percent of the breach of insurance policy claim was based on Auto–Owners' failure to indemnify, rather than to defend, the Melssens. The Melssens sought attorney fees and costs under section 10–3–1116(1), C.R.S.2011, which provides for reasonable attorney fees and court costs and two times the covered benefit in a claim for bad faith denial or delay of insurance coverage. The Melssens' counsel testified that virtually the entire trial time and arguments of counsel addressed the duty to defend. *See Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 384 (Colo.1994) (reviewing court will uphold allocations of fees if adequate evidentiary basis exists). Under these circumstances, the trial court acted within its discretion in not allocating any of the Melssens' attorney fees to the duty to indemnify claim.

¶ 74 Auto–Owners also contends the award of costs was unreasonable. However, absent a clear articulation why the basis for trial court's award—the itemized bill of costs— was unreasonable, we discern no abuse in the trial court's award.

¶ 75 The Melssens request their appellate attorney fees and costs under section 10–3–1116(1). "When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal." *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo.App.2006). Accordingly,

we grant the Melssens' request. We remand to the trial court to determine and award the amount of reasonable attorney fees and costs that the Melssens incurred in successfully defending the trial court's judgment.

¶ 76 The judgment is affirmed and the case is remanded for an award of appellate fees as directed.

Judge DAILEY and Judge FOX concur.

