25CA0057 Estate of Baker 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0057
Jefferson County District Court No. 18PR32
Honorable Todd L. Vriesman, Judge

---

In re the Estate of Lucille A. Baker, deceased.

George H. Frantz III,

Appellant,

v.

Lisa Blattner, Esq., Successor Personal Representative, Estate of Lucille Baker,

Appellee,

and

Watchtower Bible and Tract Society of New York, Inc.,

Intervenor-Appellee.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Solem, Woodward & McKinley, P.C., Peter Harris, Andrew J. Gwirtsman, Englewood, Colorado, for Appellant

Coan, Payton & Payne, LLC, Scott H. Challinor, Denver, Colorado, for Appellee

David N. Sutton, Aurora, Colorado, for Intervenor-Appellee

¶ 1    George H. Frantz III, the former personal representative of Lucille Baker's estate, appeals the district court's judgment in favor of Watchtower Bible and Tract Society of New York, Inc. (Watchtower),[1] and against him for breach of fiduciary duty and fraud during the performance of his duties as personal representative.[2]  We affirm.

## I.    Facts and Procedural History

¶ 2    Baker had no children.  When she died in January 2018, her husband, parents, and siblings were also deceased.  Susan Frantz was Baker's cousin and lived in Ohio.  A few weeks after Baker's death, Susan filed an application to appoint her son, George H.

---

[1] The district court's orders refer to Watchtower as "Watch Tower." But the parties' briefs and the record refer to the organization as "Watchtower," which we will also do.

[2] We remind Frantz's counsel that they must comply with the appellate rules, including C.A.R. 28.  The opening brief doesn't provide the record location preserving each claim and at times fails to cite the record when required.  *See* C.A.R. 28(a)(7); *O'Quinn v. Baca*, 250 P.3d 629, 631-32 (Colo. App. 2010) (we are under no obligation to search the record, and parties should not "expect the court to peruse the record without the help of pinpoint citations" (quoting *L.S.F. Transp., Inc. v. NLRB*, 282 F.3d 972, 975 n.1 (7th Cir. 2002))).  Counsel also failed to provide authority supporting the purported standard of review as required by C.A.R. 28(a)(7)(A).

Frantz III, as the estate's personal representative.[3] The Frantzes drove from Ohio to Colorado to tend to Baker's affairs.

¶ 3 A few years before her death, Baker had shown her friend, June Justice, whom she had met through church and had known for years, the location of a steel box in her home, which was hidden in a workshop closet and contained Baker's will and other important papers. Baker also gave Justice a key to her residence. Shortly after Baker's death, Justice and Brian West, an elder in Baker's congregation, used the key to enter Baker's home.[4] They found the steel box, but it was locked and they couldn't find the key. The next day, West used a drill to open the box. The box contained Baker's will, important documents, and about $25,000 in cash. Justice and West didn't inventory the box's contents, but Justice made copies of the will and returned the original to West.

---

[3] Because the Frantzes share the same surname, we will refer to George H. Frantz III as "Frantz" and to his mother as "Susan" to avoid confusion. We mean no disrespect by the informality.

[4] Justice and West had known Baker for decades and were members of the same church congregation. West served as a church elder and, as detailed below, as Frantz's point of contact for some of the communications he had with Watchtower.

¶ 4     The will was executed on August 8, 1975.  The will's named devisees (Baker's husband and her parents) and Baker's nominees for personal representatives had all died.  Watchtower was the only remaining beneficiary.  West sent Watchtower a copy of the will.

¶ 5     The court appointed Frantz as the estate's personal representative.  Frantz called Laura Frazier, a legal secretary for Watchtower, in February 2018 to inform Watchtower of his appointment and to discuss Baker's estate.  The conversation was memorialized in a letter that Watchtower's general counsel sent Frantz on February 23, 2018, which confirmed that Watchtower was a beneficiary of and had received a copy of the will.[5]  The letter also asked Frantz for the estate's accounting and inventory and provided Frantz with Watchtower's tax information.  The letter was addressed to Frantz's home, but he testified that he didn't receive it.  Frantz didn't send Watchtower the estate's accounting or inventory.

¶ 6     Frantz began administering the estate as if Baker had died intestate.  He filed a notice in a local newspaper to put estate creditors on notice and listed Baker's home for sale.  He informed

_____

[5] During his testimony, Frantz denied discussing the will.

Watchtower of the sale.  After he sold Baker's home and liquidated her estate, Frantz distributed the proceeds to Baker's intestate heirs — Susan and James Tipton (another of Baker's cousins).  Frantz also retained some funds as compensation for estate administration.[6]  He did not distribute any proceeds to Watchtower.

¶ 7     On March 25, 2019, Frantz filed a "Statement of Personal Representative Closing Administration," verifying that he had distributed the estate's assets to those entitled to receive distributions (Susan and Tipton) in the appropriate amounts.  The statement didn't mention Watchtower.

¶ 8     Between September 2018 and May 2019, Watchtower sent Frantz at least four letters asking about the estate's probate status.  Watchtower never received a response.  Frantz testified that he never received any of these letters even though they were all addressed to his home.  Watchtower also called Frantz multiple times and left messages, but Frantz denied receiving any phone calls.

---

[6] The accounting prepared during litigation showed that Susan received $770,619.75 and Tipton received $263,282.96 from the estate's proceeds.  Frantz paid himself $26,282.96 in compensation.

¶ 9     In April 2020, Watchtower conducted its own investigation and realized that Baker's house had been sold in April 2018. Watchtower sent another letter to Frantz on April 14, 2020, requesting a copy of the closing statement for the sale of Baker's residence and an estate accounting.

¶ 10     After years of no response from Frantz, Watchtower contacted the probate court and received the case file for the estate on April 7, 2022. Watchtower discovered that Frantz had not complied with Baker's will and had instead administered the estate as if Baker had died intestate. In August 2022, Watchtower filed a motion to intervene and reopen the estate. Frantz didn't respond. The court granted the motion to intervene but didn't enter any findings regarding the validity of the will or whether the estate should be reopened for redistribution.

¶ 11     On January 24, 2023, Watchtower moved to appoint a successor personal representative and to probate the will. Frantz didn't respond, and the court granted the motion, appointing the current successor personal representative in March 2023.

¶ 12     In September 2023, the successor personal representative filed the underlying petition and asserted claims against Frantz for

(1) breach of fiduciary duty under the Colorado Probate Code;
(2) conversion; (3) civil theft; (4) unjust enrichment; (5) fraud (false representation); (6) fraud (nondisclosure or concealment); (7) fraud (nondisclosure – duty to disclose); and (8) fraudulent transfer. Frantz moved to dismiss the petition for failure to state a claim and for being untimely. The district court denied the motion to dismiss after concluding that the claims were alleged with sufficient particularity and that the applicable statute of limitations was five years under section 15-10-106, C.R.S. 2025. After a one-day evidentiary hearing on the petition, the court dismissed the claims for conversion, civil theft, unjust enrichment, fraud (false representation), and fraudulent transfer. The court entered judgment in Watchtower's favor on the remaining two fraud claims and the breach of fiduciary duty claim. Frantz appeals.

## II.    Analysis

¶ 13    Frantz contends that the district court erred by finding that (1) West and Frazier were not Watchtower's agents; (2) Watchtower wasn't on notice that Baker's estate was being administered contrary to her will until Watchtower received the probate court's case file on or about April 7, 2022; and (3) Frantz breached his

fiduciary duty. We address and reject each of these contentions in turn.

## A. Agency

¶ 14    Frantz first argues that the district court erroneously found that there was no agency connection between individual church members that would bind Watchtower or otherwise impair its legal rights. In support, Frantz asserts that West was Watchtower's agent based on the following: West sent Watchtower a copy of the will, he was a church elder, and he put Frantz in contact with Watchtower. Similarly, he contends that Frazier was an agent because she worked for Watchtower, communicated with Frantz about the estate, and tracked whether Watchtower had received estate proceeds. Frantz contends that, because they were agents and were aware in February 2018 that Frantz was administering Baker's estate, Watchtower was also aware, and any claims against Frantz started accruing at that time. We aren't persuaded.

¶ 15    The question of agency is, when the facts are disputed, a question of fact, *Villalpando v. Denv. Health & Hosp. Auth.*, 181 P.3d 357, 363 (Colo. App. 2007); we will only set aside the court's finding on that question if it is clearly erroneous, *Citywide Banks v. Armijo,*

7

313 P.3d 647, 651 (Colo. App. 2011).  A factual finding is clearly erroneous only if there is no support for the finding in the record. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.  We will not "reweigh [the] evidence" or substitute our own judgment for that of the district court.  *In re Estate of Owens*, 2017 COA 53, ¶ 22 (citation omitted).

¶ 16    An agent is generally one who acts for, or in place of, another or who is entrusted with the business of another, and an agency relationship carries legal consequences.  *Armijo*, 313 P.3d at 651. "An agent can make his principal responsible for his actions if he is acting pursuant to either actual or apparent authority." *First Horizon Merch. Servs., Inc. v. Wellspring Cap. Mgmt., LLC*, 166 P.3d 166, 177 (Colo. App. 2007) (quoting *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994)).  An agent acts with actual authority when "the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."  *State Farm Mut. Auto. Ins. Co. v. Johnson,* 2017 CO 68, ¶ 21 (citation omitted).

¶ 17    Ample evidence in the record supports the court's finding that West and Frazier were not agents because neither participated in

Watchtower's financial, business, or legal matters. Similarly, although Frantz points to evidence that West and Frazier were aware that he was selling Baker's residence and disposing of her assets, he fails to demonstrate how that awareness established either actual or apparent authority. Mere status as an elder or secretary of Watchtower, standing alone, doesn't confer authority to bind Watchtower in any capacity. We therefore perceive no error with the court's finding that West and Frazier weren't agents.

¶ 18    Even if West and Frazier had been Watchtower's agents, however, any error would have been harmless because there is no evidence supporting Frantz's argument that the statute of limitations for Watchtower's claims began running in February 2018. As discussed below, nothing would have put West and Frazier or Watchtower on notice that Frantz was administering the estate as if Baker had died intestate.

## B.    Statute of Limitations

¶ 19    Frantz next argues that the district court incorrectly determined that the claims accrued on April 7, 2022, for purposes of applying the statute of limitations. We disagree.

### 1. Standard of Review and Applicable Law

¶ 20 Because the accrual date is factually disputed, we review the district court's order for clear error. *See Jackson v. Am. Fam. Mut. Ins. Co.*, 258 P.3d 328, 332 (Colo. App. 2011) (when the material facts are disputed, the question of when a claim accrued is one of fact).

¶ 21 Section 15-10-106 states that

> [w]henever fraud has been perpetrated in connection with any proceeding or in any statement filed under this code or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within five years after the discovery of the fraud.

"Integral to any statute of limitations is the time of accrual: the time when the proverbial clock starts ticking and the statute of limitations begins to run." *City & County of Denver v. Bd. of Cnty. Comm'rs*, 2024 CO 5, ¶ 27 (citation omitted). A cause of action for fraud, misrepresentation, concealment, or deceit accrues on the date that the fraud "is discovered or should have been discovered by

10

the exercise of reasonable diligence." § 13-80-108(3), C.R.S. 2025. Likewise, a cause of action for breach of fiduciary duty accrues when the plaintiff has knowledge of facts that would put a reasonable person on notice that the defendant engaged in wrongful conduct causing some damages. *Prospect Dev. Co. v. Holland & Knight, LLP*, 2018 COA 107, ¶ 26; *see also* § 13-80-108(8) (The cause of action accrues "when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence.").

¶ 22　　To establish a claim for fraud by nondisclosure, a plaintiff must prove that (1) the concealment of a material existing fact that in equity and good conscience the defendant should have disclosed; (2) knowledge on the defendant's part that such a fact was being concealed; (3) ignorance of that fact on the plaintiff's part; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 56. To establish a claim for breach of fiduciary duty, a plaintiff must prove that (1) the defendant was acting as a fiduciary of the plaintiff; (2) the defendant breached a fiduciary duty owed to the plaintiff; (3) the

11

plaintiff incurred damages; and (4) the defendant's breach of fiduciary duty was a cause of the damages. *In re Estate of Chavez*, 2022 COA 89M, ¶ 36.

¶ 23    Watchtower's fraud claims could not have accrued until Watchtower knew, or should have known, that Frantz concealed or failed to disclose a material fact. Likewise, Watchtower's breach of fiduciary duty claims could not have accrued until Watchtower had, or should have had, knowledge that Frantz breached his personal representative duty.

### 2.    Analysis

¶ 24    The record supports the court's conclusion that Watchtower didn't have notice — and couldn't have reasonably discovered — the alleged fraud or breach of fiduciary duty until April 7, 2022, when it received the case file from the probate court. Before then, there was no indication to Watchtower, West, or Frazier that Frantz was administering the estate contrary to Baker's will. Instead, they reasonably relied on Frantz's repeated representations that he was administering the estate and that distribution of the estate's assets would be forthcoming, as required by the will.

¶ 25    The record further reflects that Frantz's conduct, at least outwardly, was consistent with proper estate administration. Frantz acted as the personal representative, sold Baker's residence, and informed Watchtower that he planned to distribute the proceeds of the sale to Watchtower. Watchtower later confirmed this discussion. Although Watchtower became aware around April 2020 that Baker's house had been sold,[7] based on the record, Watchtower had no reason to believe that it wouldn't receive the proceeds from the sale. Further, nothing in the record indicated that Watchtower knew or was told that Frantz didn't open the will for probate, that he failed to identify Watchtower as a beneficiary in court filings, or that he had administratively closed the estate after disbursing the sale proceeds to Susan and Tipton.

¶ 26    Likewise, Frantz didn't serve Watchtower with the information of appointment, didn't provide a copy of the home's closing statement or accounting from the home sale, and testified that he never informed Watchtower that he was administering the estate as

---

[7] Even assuming the accrual date was April 2020, when Watchtower learned the house had been sold, the claims are timely because they fall within the five-year statute of limitations.

intestate. On this record, there were no circumstances that would have placed Watchtower on notice that Frantz breached a fiduciary duty or engaged in fraud until Watchtower received the estate's court file on April 7, 2022. Accordingly, the district court did not err by concluding that the accrual date was April 7, 2022.

¶ 27    To the extent Frantz's testimony conflicted with the district court's findings, the court found that his testimony wasn't credible. We defer to the court's credibility determinations and factual findings. *Owens*, ¶ 22 (we may not reweigh the evidence or substitute our judgment for the trial court's). Given the absence of notice and Watchtower's reasonable reliance on Frantz's representations, we discern no clear error with the court's determination that the claims for fraud and breach of fiduciary duty accrued on April 7, 2022.

### C.    Other Issues

¶ 28    Frantz also contends that (1) the evidence was insufficient to support a fraud finding, and (2) the district court erroneously held him to a professional standard of care by concluding that he breached his fiduciary duty. However, these arguments are presented in a conclusory manner and are unsupported by citation

14

to relevant legal authority. We won't consider them further because we do not consider undeveloped arguments on appeal. *See Am. Fam. Mut. Ins. Co. v. Am. Nat'l Prop. & Cas. Co.*, 2015 COA 135, ¶ 42.

### D. Attorney Fees

¶ 29 Although Frantz requests an award of attorney fees on appeal, we decline to award any for his failure to comply with C.A.R. 39.1, which requires parties claiming attorney fees to "explain the legal and factual basis" for such an award. *See also Sos v. Roaring Fork Transp. Auth.*, 2017 COA 142, ¶ 59 (declining to consider an "undeveloped request" for attorney fees when the requesting party failed to state any legal or factual basis for an award). Also, Frantz didn't prevail on appeal.

¶ 30 The Estate and Watchtower also request an award of attorney fees and costs on appeal. "When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal." *Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 75 (quoting *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006)). The Estate and Watchtower sought attorney fees for their successful

defense of the action in the district court, and the court granted their request.[8]  In requesting fees on appeal, the Estate and Watchtower argue that Frantz's appeal is frivolous.  We disagree; Frantz raised a genuine issue regarding the accrual date.

¶ 31    Because the Estate and Watchtower successfully defended the district court's judgment on appeal, were awarded attorney fees by the district court, and cited a legal and factual basis supporting the award under C.A.R. 39.1, we grant their request.  We remand the case to the district court to determine and award the amount of reasonable attorney fees and costs that the Estate and Watchtower incurred on appeal.

---

[8] Though not included as part of the record, we take judicial notice of the district court's "Order re Attorney Fees and Costs by WatchTower" and "Order: Granting Motion for Personal Representative's Fees and Costs," issued on May 21, 2025, which finalized the specific amount of attorney fees and costs payable to the Estate and Watchtower.  *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (appellate courts can take judicial notice of the contents of court records in a related proceeding whether requested to do so or not).

## III. Disposition

¶ 32    The judgment is affirmed.  We remand the case to the district court to determine appropriate appellate attorney fees for the Estate and Watchtower.

JUDGE J. JONES and JUDGE LUM concur.